1   LARRY W. GABRIEL - Bar No. 68329
    STEVEN T. GUBNER - Bar No. 156593
2   COREY R. WEBER - Bar No. 205912
    EZRA BRUTZKUS GUBNER LLP
3   21650 Oxnard Street, Suite 500
    Woodland Hills, CA 91367
4   Telephone:  (818) 827-9000
    Facsimile:   (818) 827-9099
5   Email:    lgabriel@ebg-law.com
              sgubner@ebg-law.com
6             cweber@ebg-law.com

7   Attorneys for Plaintiffs Hal Katersky, Barry Lavine,
    as the individual trustee of the Amended and Restated
8   Hal Katersky Irrevocable Life Insurance Trust,
    Hillary A. Katersky, Andrew Katersky, Robin Katersky,
9   Jeffrey Katersky and Dylan Zelman

FILED
CLERK, U.S. DISTRICT COURT

MAY 23 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

10                  UNITED STATES DISTRICT COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12  HAL KATERSKY, BARRY LAVINE,        Case No.   CV12- 04503 DMG (CWx)
    AS THE INDIVIDUAL TRUSTEE OF
13  THE AMENDED AND RESTATED           COMPLAINT FOR;
    HAL KATERSKY IRREVOCABLE
14  LIFE INSURANCE TRUST DTD           1. DECLARATORY RELIEF;
    8/29/2008, HILLARY A. KATERSKY,    2. INJUNCTIVE RELIEF;
15  ANDREW KATERSKY, ROBIN             3. FRAUD;
    KATERSKY, JEFFREY KATERSKY         4. BREACH OF CONTRACT;
16  AND DYLAN ZELMAN                   5. INTENTIONAL INFLICTION OF
                                          EMOTIONAL DISTRESS;
17              Plaintiffs,            6. NEGLIGENT INFLICTION OF
                                          EMOTIONAL DISTRESS;
18        v.                           7. UNFAIR BUSINESS PRACTICES;
                                       8. ELDER ABUSE
19
20  IMPERIAL PREMIUM FINANCE,
    LLC; IMPERIAL LIFE
21  SETTLEMENTS, LLC; BANK OF
    UTAH, and THE LINCOLN
22  NATIONAL LIFE INSURANCE            **JURY DEMAND**
    COMPANY,
23
                Defendants.
24                                     Judge:
25                                     Discovery Cutoff:
                                       Motion Cutoff:
26                                     Trial Date:
27
28

                                    1

589708

Plaintiffs, Hal Katersky ("Katersky"), Barry Lavine ("Lavine"), solely in his capacity as the individual trustee of the Amended and Restated Hal Katersky Irrevocable Life Insurance Trust and Hillary A. Katersky, Andrew Katersky, Robin Katersky, Jeffrey Katersky and Dylan Zelman (the "Trust Beneficiaries") (collectively, the "Katersky Parties"), by and through their attorneys, hereby files this Complaint against Defendants Imperial Premium Finance, LLC, Imperial Life Settlements, LLC, Bank of Utah  and The Lincoln National Life Insurance Company, allege as follows:

## NATURE OF THE ACTION

1.      This is an action brought for Declaratory Judgment under 28 U.S.C. § 2201 and Rule 57of the Federal Rules of Civil Procedure and for other relief in which the Katersky Parties seek a determination as to their rights and interests in a $10 million life insurance policy, policy no. JJ7031503 (the "Policy") issued by The Lincoln National Life Insurance Company ("Lincoln").  The Policy was purchased by the Hal Katersky Irrevocable Life Insurance Trust (the "Katersky Trust") to fund the estate planning needs of Katersky, and thereafter financed by Imperial Premium Finance, LLC ("IPF").  Katersky is 69 years old, has an inoperable brain tumor and is gravely ill.  IPF and Imperial Life Settlements, LLC, ("ILS") contend that they are the owners of the Policy and or have asserted dominion and control over the Policy so as to deprive the Katersky Parties of the ownership and benefits of the Policy.  The Katersky Parties, to wit: the insured, Katersky, the individual trustee of the Trust that owns the Policy, Lavine, and the Trust Beneficiaries,  contend that the Katersky Trust owns the Policy, and that IPF's interest is limited to the amount owing for the premium financing  provided by IPF, and that ILS has no interest in the Policy whatsoever.  The Katersky Parties further contend that IPF's conduct violates their rights and interest in the Policy, and that their assertion of dominion and control over the Policy and the Katersky Trust constitutes a fraud, unfair business practice and elder abuse, among other claims.  There is, therefore, an actual controversy of a

2

justiciable nature concerning the rights and obligations of the parties in and to the Policy issued to the Katersky Parties.

**PARTIES**

2.     Plaintiff Hal Katersky is a citizen of the State of California residing in the County of Ventura, State of California.

3.     Plaintiff Barry Lavine is a citizen of the State of California residing in the County of Los Angeles, State of California.   Mr. Lavine is acting solely in his capacity as the individual trustee of the Amended and Restated Hal Katersky Irrevocable Life Insurance Trust.

4.     Plaintiff Hillary A. Katersky is a citizen of the State of California residing in the County of Ventura, State of California.

5.     Plaintiff Andrew Katersky is a citizen of the State of California residing in the County of Los Angeles, State of California.

6.     Plaintiff Robin Katersky is a United States citizen and a citizen of Australia, currently residing in Tasmania, Australia.

7.     Plaintiff Jeffrey Katersky is a citizen of the State of California residing in the County of Ventura, State of California.

8.     Plaintiff Dylan Zelman is citizen of the State of California, residing in the County of Ventura, State of California.

9.     Defendant Imperial Premium Finance, LLC ("IPF") is a citizen of Delaware, being organized and existing under the laws of the State of Delaware, with its principal offices in Boca Rattan, Florida.

10.     Defendant Imperial Life Settlements, LLC ("ILS") is a citizen of Delaware, being organized and existing under the laws of the State of Delaware with its principal offices in Boca Rattan, Florida.

11.     Defendant Bank of Utah is a citizen of the state of Utah and is a Utah state chartered commercial bank with its principal place of business in Ogden, Utah. Bank of Utah is the purported corporate trustee of the Hal Katersky Trust.

12.     Defendant The Lincoln Life Insurance Company ("Lincoln") is a citizen of Indiana, being a life insurance company organized and existing under the laws of the State of Indiana, with its principal place of business located at 1300 South Clinton Street, Fort Wayne, Indiana 46802.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) (3), insofar as this is an action between citizens of different states and in which a citizen of a foreign state is an additional party.  Alternatively jurisdiction is appropriate under 1332(a) (1) in that this is an action between citizens of different states. The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred here.

## STATEMENT OF FACTS

15.     Plaintiff Katersky is 69 years old and is currently being treated for life threatening brain cancer.   He is and was at various times a builder and developer, and the 50% owner of a company, Pacifica Ventures, LLC, a California limited liability company formed in 1994 for the purpose of developing and building commercial real estate, specifically movie studios in locations that offer incentives to movie and television producers.

16.     In or around 2007, a life insurance broker, Stuart Cohen ("Cohen"), was approached by Larry Soloman ("Soloman"), a financial advisor for Katersky, inquiring about life insurance for his client.  Over the next several months Cohen, Soloman and Katersky met to discuss Katersky's financial needs, in consideration of his then current business operations, family structure and needs to fund various estate planning obligations.  Based thereon, a determination was made by Katersky to seek a Universal Life policy in the amount of $10 million, to supplement his then existing ///

4

two term life policies of $1 million each.  Those policies were issued by Metropolitan and John Hancock, which policies are still in force and effect.

17.   In the first quarter 2008, Cohen made inquiry to approximately 10 life insurance companies, as to their willingness to issue a policy insuring Katersky for $10 million in coverage.  Although multiple carriers offered coverage, Lincoln was selected as the provider.

18.   In April 2008, Cohen made application for insurance for Katersky with Lincoln.  The policy was originally to be issued to Plaintiff, Hillary Katersky, Hal Katersky's wife, as the owner and beneficiary of the policy.  The application was not acted upon and the policy was not issued.

19.   In June or July 2008, Cohen, on behalf of Katersky, submitted a new application to Lincoln for a $10 million policy.  The policy was to be issued to the Hal Katersky Irrevocable Life Insurance Trust.   As part of the evaluation process, Katersky was subject to an independent medical examination.   The medical examination determined at the time that Katersky was quite healthy, and at 67 years old was given a life expectancy of 270 months by the "rating agencies".  Shortly thereafter the "rating agency" changed their expectancy analysis, raising Katersky's life expectancy by 24 months.

20.   In or around July 2008, Katersky formed the Hal Katersky Irrevocable Life Insurance Trust.  The Lincoln $10 million Policy was issued to the Trust on or about July 18, 2008.  Katersky paid the first few months of premium on the policy (approximately $21,000).   The individual trustee for the Katersky Trust is Barry Lavine.

21.   In or around August, 2008, Katersky submitted an application to finance the premium for the Policy to IPF.  On or about September 21, 2008, at the request of IPF, and in order to obtain financing for the premiums on the Policy, Katersky signed an "Amended and Restated Hal Katersky Irrevocable Life Insurance Trust (the "Katersky Trust").  Bank of Utah is designated in the Katersky Trust as the

"Independent Professional Trustee". In accordance with the terms of the Katersky Trust, the Independent Trustee 'shall not have any of the duties or obligations of any Trustee hereunder." A true and correct copy of the Katersky Trust is attached hereto as Exhibit 1.

22.     On or about September 26, 2008, the Katersky Trust and IPF entered into a Loan Application and Agreement dated as of September 26, 2008 (the "Loan Agreement") pursuant to which IPF agreed to lend, on the terms and conditions and subject to the limitations set forth in the Loan Agreement, funds to pay premiums on the Policy owned by the Katersky Trust, together with related Trustee Expenses. In addition to the Loan Agreement, the parties entered into several other transaction documents, including a Promissory Note (the "Note"), an Assignment of Life Insurance Policy as Collateral (the "Assignment") and a Personal Guaranty (the "Guaranty") (collectively the "Loan Documents"). The loan was all due and payable on October 15, 2010.

23.     Between October 2008 and October 2010, IPF paid the premiums due on the Policy for the benefit of the Katersky Parties. Thereafter, a dispute arose between the Katersky Parties and IPF regarding their rights and obligations under the terms of the Loan Documents, with the Katersky Parties contending that IPF violated certain terms and conditions of the Loan Documents, including failing to provide the Katersky Parties with a pay-off amount of the Loan, although demand therefore had been made by the Katersky Parties.

24.     IPF refused to comply with Plaintiffs demand to provide the pay-off information, insisting that it had foreclosed on the Policy as collateral for the premium financing, and further insisting that it (IPF) was the owner of the Policy.

25.     IPF continued to advance funds on a monthly basis to keep the Policy in force and effect. The payments were made by IPF directly to Lincoln. By July 2011 IPF had advanced approximately $425,000.00, as premium finance loans.

///

6

26.     As a result of the refusal of IPF to allow the Katersky Parties to pay off the premium finance loan, and obtain a release of its lien, a dispute arose between the parties as to each of their rights and obligations with respect to the loan and the Policy.

27.     The Katersky Parties and IPF attempted to address the dispute in or around July 2011 as represented by a letter agreement between Katerksy, the Katersky Trust and IPF (the "July Letter Agreement"), pursuant to which IPF was to pay the Katersky Parties $150,000.00 to purchase the Policy, with the Katersky Trust retaining a $1 million beneficial interest in the proceeds of the Policy, when and if paid.  IPF was to take all steps necessary to effectuate the transfer of ownership of the Policy, and to keep the Policy in force and effect without limitation.  Any monies due and owing from the Katersky Parties were to be deemed satisfied upon the transfer of ownership of the Policy.  At the time of the July Letter Agreement, IPF failed to obtain the approval of the form, or the terms and conditions of the July Letter Agreement by the Utah Department of Insurance.

28.     In or about August 1, 2011, IPF wire transferred $150,000 to the trust account of the Katersky Parties' attorneys.  Pursuant to the July Letter Agreement, $50,000 of the money was released to the Katersky Parties, with the balance remaining in trust, pending completion of the transfer of the ownership of the Policy.

29.     Between July 8, 2011 and September 27, 2011, the Katersky Parties and IPF exchanged a series of documents that IPF required be executed to effectuate the change of ownership of the Policy from the Katersky Trust to IPF.  The final documents were signed by the Katersky Parties and sent to IPF on September 26, 2011.  As of September 26, 2011, the Katersky Parties had fully complied with all of their obligations under the July Letter Agreement.

30.     On September 27, 2011 IPF's business operations were subject to a "raid" by the FBI, as a result of an investigation by the State of New Hampshire,

among other states, as to IPF's business practices.[1]

31.   Because of the government investigation, the Katersky Parties became concerned that IPF would not be able to perform timely its obligations under the terms of the July Letter Agreement, as presented in a letter to IPF dated September 30, 2011, a copy of which is attached hereto as Exhibit 2.

32.   IPF responded by representing that it was fully capable, willing and able to perform the terms of the July Letter Agreement, including confirming that IPF had the wherewithal to make all premium payments required to be made to continue the Policy in full force and effect; and further, IPF would continue to process the change of ownership application with Lincoln; and, that all other terms and conditions of the July Letter Agreement, would remain in force and effect.  Plaintiffs are informed and

---

[1] On April 30, 2012, the U.S. Attorney's office issued the following press release regarding a settlement reached with IPF:

> Imperial Holdings, Inc. (Imperial), a publicly traded specialty finance corporation headquartered in Boca Raton, Florida, has entered into a Non-Prosecution Agreement (NPA) with the United States Attorney's Office for the District of New Hampshire to pay an $8 million penalty to resolve fraud allegations related to Imperial's involvement in making misrepresentations on life insurance applications in connection with its premium finance business. . .

> According to the NPA, from December 2006 through January 2009, as part of its premium finance business, certain Imperial employees, who were licensed insurance agents, worked with external general agents and brokers, to obtain life insurance policies on individuals over 65 years of age for which Imperial would offer premium finance loans. These Imperial employees had direct contact with the prospective insureds and worked with the insureds and external general agents and brokers to complete life insurance applications for submission to various life insurance companies.

> While Imperial employees were engaged in this business, many life insurance applications required the insured and the agent to disclose information about whether premium payments would be funded by a premium finance loan. An insured was typically required to disclose if he or she intended to seek such a loan to pay premiums and often the agent was also required to disclose if he or she was aware of an intent by the insured to obtain such a loan. When applications were submitted to insurance companies that likely would not have issued a policy if the application accurately described the insured's intent to obtain premium financing, the Imperial employees, who were acting as life insurance agents on the policies, made and/or facilitated misrepresentations on the applications that concealed the insured's intent to seek a premium finance loan from Imperial.

> The United States Attorney's Office entered into the NPA with Imperial based, in part, on Imperial's decision to terminate its premium finance business and separate the employees who are known at this time to have been primarily involved in the misconduct identified above, Imperial's substantial cooperation to date in the investigation into its premium finance business, and the United States Attorney's Office's desire to limit the negative impact and adverse consequences to the non-premium finance aspects of Imperial's business and the Company's employees and shareholders that would result from a prosecution of Imperial.  In addition to the monetary penalty, Imperial has agreed, among other things, to provide cooperation to the United States Attorney's Office and investigatory agencies, including providing documents and the assistance of its officers, agents and employees.

believe and based thereon allege that at the time of entering into the July Letter Agreement and thereafter including as of September 30, 2011, IPF knew that the July Letter Agreement violated Utah insurance laws, rules and regulations, and that the same was null and void as against public policy.  IPF failed to advise the Katersky Parties of the same.

33.   Subsequent thereto, Mr. Katersky was diagnosed as having an inoperable cancerous tumor (brain) and began stem cell treatment for the same at U.C.L.A. hospital.  IPF was advised of Mr. Katersky's condition, and was further advised that given Mr. Katersky's health issues and the pending treatment, Mr. Katersky was most anxious to put his financial affairs in order so that he would have peace of mind that his wife and family were properly provided for in the event the treatments were not successful.

34.   That communication resulted in a proposal by IPF that IPF would terminate any previous understandings of the parties, with IPF offering to add the $150,000 payment to any balance due to IPF assuming arguendo the July 8, 2011 agreement was terminated.  IPF further proposed the Katersky Parties would continue to be the owners/beneficiaries of the Policy; however, they would then become obligated to repay IPF all monies previously advanced for the payment of the Policy premiums, including the additional $150,000.  The total amount of the obligation would thus be approximately $700,000.  No terms of repayment or further financing were discussed.  IPF further proposed that IPF would become a beneficiary of the Katersky Trust, with the right to receive all of the proceeds from the Policy, less $1 million, if and when paid, rather than taking ownership of the Policy, as agreed to in July Letter Agreement. At or about the same time, IPF agreed to release the balance of the $150,000 ($100,000) to the Katersky Parties.

35.   The Katersky Parties are informed and believe and based thereon allege that IPF's proposal was an attempt to circumvent Utah insurance laws, rules and regulations, that prohibits an insurance premium finance company from obtaining an

9

interest in an insured's policy, over and above any and all amounts due based solely on the financing. See, e.g. Utah Code Annotated (U.C.A) 31A-21-104 (Insurable interest and consent, requires that an insurable interest exist not only on the effective date of the insurance but also at the time of the later procurement of an interest in the proceeds. Further, subsection U.C.A. 31A-21-104(2) (b) states that a "person may not knowingly procure, directly, by assignment or otherwise, an interest in the proceeds of an insurance policy unless that person has or expects to have an insurable interest in the subject of the insurance."   As defined, IPF only had an insurance interest up and to the extent of the financial obligation owed to it for the premium financing.  Because IPF had a limited insurable interest, IPF knew that the Utah Department of Insurance and Lincoln would not allow any IPF interest in the Policy to exceed the amount for which IPF had an insurable interest.

36.    The Katersky Parties are informed and believe that notwithstanding that IPF failed to obtain approval from the Utah Department of Insurance for the July Letter Agreement, and that IPF failed to complete the transactions as contemplated by the July Letter Agreement, and that the Katersky Parties and IPF had not concluded any other binding arrangement,  IPF initiated a change of trustee for the Katersky Trust, (notwithstanding IPF's representations to the contrary) removing the Katersky Trust's individual Trustee, Mr. Lavine, in place of  Defendant  Bank of Utah, which event should have occurred only upon transfer of ownership of the Policy.   The Katersky Parties have demanded that IPF immediately advise Lincoln and Bank of Utah of the erroneous removal of the individual Trustee and reinstate Mr. Lavine as the individual Trustee.   The Katersky Parties are informed and believe and based thereon allege that IPF has failed to do so.

37.    Based upon the foregoing, in or around November and December 2011, the Katersky Parties notified IPF that they deemed IPF to be in breach of the July Letter Agreement and demanded that IPF provide the Katersky Parties with the exact amount due and owing IPF so that the Katersky Parties could pay- off any amounts

owed to IPF and own the Policy free and clear of any lien or interest of IPF.  IPF refused to comply with the demand.

38.    On or about January 5, 2012, the Katersky Parties obtained information that IPF was attempting to sell the Policy on the secondary market.  The Katersky Parties demanded that IPF cease and desist its activities, and again demanded IPF provide the Katersky Parties with the pay- off demand previously requested.  A true and correct copy of the demand letter is attached hereto as Exhibit 3.  IPF refused to comply with the demand, and refused to provide the Katersky Parties with a pay-off demand.

39.    Between January 5, 2012, and up to May 4, 2012, the Katersky Parties and IPF engaged in a series of discussions in an attempt to resolve their differences.  The discussions failed, and no written agreement was entered into.  On May 4, 2012, the Katersky Parties notified IPF of its position that (a) no final agreement has been reached and (b) IPF's only rights are to receive repayment of any amounts paid by IPF in regard to the financing of the policy.  Further, the Katersky Parties once again demanded a payoff figure of the amount IPF contends it is owed for the financing of the premium as of the May 4, 2012.   IPF refused to comply with the request. A true and correct copy of the letter is set forth as Exhibit 4.  On May 21, 2012, IPF made demand on the Katersky Parties to repay the $150,000 but failed to provide the Katersky Parties with the amount owing IPF for the premium financing so that the Katersky Parties could pay off the IPF financing obligation, including the $150,000.  At the same time, IPF notified the Katersky Parties that "Imperial Finance will be exercising all available rights under the Loan Agreement and related documents." A true and correct of the letter is set forth as Exhibit 5.

40.    As of the filing of this complaint, contrary to the Katersky Parties' rights, title and interests in and to the Policy, the Katersky Parties are informed and believe that:   (a) IPF continues to make the monthly premium payments to Lincoln; (b) Defendant Bank of Utah is acting as the sole trustee of the Katersky Trust, in violation

11

1 of the rights and interests of the Katersky Parties; (c) IPF refuses and continues to
2 refuse to provide the loan pay-off information necessary for the Katersky Parties to
3 pay IPF the money due in regard to the premium financing of the Policy; (d) IPF
4 asserts that it is the owner of the Policy and that the Katersky Parties have no interest
5 in the same, and is attempting to obtain control of the Policy and the eventual
6 proceeds of the same, notwithstanding it has not legal basis to do so.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**(For Declaratory Relief as to the Rights and Interests of the Parties
in and to the Policy Against All Defendants)**

11      41.    Plaintiffs reallege and incorporate paragraphs 1 through 40 above by
12 reference as though fully set forth herein.

13      42.    On the facts alleged above, there is now an actual controversy of a
14 justiciable nature as to whether the Policy is owned by the Katersky Parties, whether
15 Barry Lavine and /or the Bank of Utah is the Trustee of the Trust, and what are the
16 rights and interests of IPF and ILS in and to the Policy.

17      43.    The Katersky Parties are entitled to a judicial declaration, in view of the
18 circumstances surrounding the Policy as to the rights, title and interests of the
19 Plaintiffs and the Defendants in and to the Policy.

20      44.    The Katersky Parties respectfully request the entry of an Order by this
21 Court declaring that:

22      (a) The Katersky Parties are the owners, and beneficiaries of the Policy;

23      (b) IPF's only rights are to receive repayment of any amounts paid by IPF to
24 Lincoln or to the Katersky Parties in regard to the financing of the policy and that IPF
25 must provide the Katersky Parties with a proper demand for repayment of its
26 obligations and that IPF has no other interest in or to the Policy;

27      (c) Barry Lavine is the individual Trustee for the Trust;

28      (d) Bank of Utah is not a Trustee of the Trust;

12

(e) Lincoln is bound to honor the terms and conditions of the Policy as to the Katersky Parties;

(f) ILS has no right, title or interest in the Policy.

## SECOND CLAIM FOR RELIEF

### (Temporary Restraining Order and Preliminary Injunction Against All Defendants)

45.     Plaintiffs reallege and incorporate paragraphs 1 through 44 above by reference as though fully set forth herein.

46.     Based upon the controversy as between the parties as hereinabove alleged, Plaintiffs seek a temporary restraining order and preliminary injunction, restraining and enjoining Defendants, and each of them, from selling, transferring, assigning, or other attempting to exert dominion and control over the Policy, during the pendency of this action.

47.     Should a restraining order not issue, Plaintiffs will suffer irreparable harm should the Policy be transferred, sold or otherwise assigned by Defendants, in that any potential third party acquiring could asset an ownership interest in and to the Policy, and thus subject Plaintiffs to a loss of their interests in the Policy.

48.     Plaintiffs are entitled to such injunctive relief as Plaintiffs do not have an adequate remedy at law, in that this controversy involved title to personal property, which is unique and cannot be replaced given the facts and circumstances of Katersky's health.

## THIRD CLAIM FOR RELIEF

### (For Fraud Against Defendant IPF)

49.     Plaintiffs reallege and incorporate paragraphs 1 through 40 above by reference as though fully set forth herein.

50.     As hereinabove alleged, IPF's conduct in inducing the Katersky Parties to enter into the July Letter Agreement, was based upon material misrepresentations of fact and law, in that at or about the time IPF was negotiating the July Letter

Agreement and thereafter, IPF knew that it was engaged in illegal criminal conduct of such a nature as to threatened IPF's financial viability, knew of the requirements of the Utah Department of Insurance with respect to the sale of life insurance policies, knew that such sale agreements had to be preapproved by the Utah Department of Insurance, and yet, induced the Katersky Parties to enter into the July Letter Agreement and thereafter to negotiate with IPF to a structure of the sale of the Policy to IPF failing to disclosed these material facts to the Katersky Parties prior to the time the July Letter Agreement was signed and thereafter in regard to the negotiations between IPF and the Katersky Parties as to the sale of the Policy.

51.    In making the fraudulent misrepresentations or omissions of material fact to the Katersky Parties, IPF intended the Katersky Parties to rely on the same, and in fact the Katersky Parties did rely on IPF's misrepresentations and omissions of material fact in entering into the July Letter Agreement and thereafter in engaging in negotiations with IPF regarding the sale of the Policy.   In fact and in truth, IPF had no intention of performing its obligations under the July Letter Agreement, in that IPF knew that the same was illegal and void, and was in violation of Utah's insurance laws, and further that IPF was using the July Letter Agreement and the negotiations that took place thereafter to obtain ownership and control of the Policy.   IPF's fraudulent conduct is further demonstrated by its (a) unilaterally changing the trustee of the Katersky Trust to the Bank of Utah, and (b) refusal to provide the Katersky Parties with a payoff demand of the amounts it is owed for the financing of the premium of the Policy.

52.    As a direct and proximate cause of IPF's fraud as hereinabove alleged, the Katersky Parties have been damaged in an amount to be determinate at the time of the trial of this matter, but in excess of the jurisdictional limits of this court.

53.    IPF's conduct as hereinabove alleged was done, intentionally, willfully, maliciously and with reckless disregard to the rights of the Katersky Parties so has to ///

1  entitle the Katersky Parties to punitive damages as against IPF, in the amount to be
2  determined at the time of trial of this matter.

3  ### FOURTH CLAIM FOR RELIEF
4  **(Breach of Contract and the Implied Covenant of Good Faith
   and Fair Dealing Against IPF)**
5

6  54.   Plaintiffs reallege and incorporate paragraphs 1 through 40 above by
7  reference as though fully set forth herein.

8  55.   The Katersky Parties fulfilled all of their obligations owed to IPF under
9  the terms of the Loan Agreement, and to the extent applicable the July Letter
10  Agreement, except where excused by the failure of IPF to perform its obligations
11  owed to the Katersky Parties.

12  56.   IPF breached its obligations owed to the Katersky Parties under the terms
13  of the Loan Agreement and to the extent applicable the July Letter Agreement,
14  including its obligation to act in good faith and deal fairly with the Katersky Parties by
15  refusing to provide the Katersky Parties with the appropriate information so that the
16  Katersky Parties could pay off their obligations to IPF, and by failing to respond to the
17  Katersky demand for a pay- off information, and  by acting in such a manner in an
18  attempt to rest control and the benefits of the Policy from the Katersky Parties all as
19  heretofore described.

20  57.   As a direct and proximate result of IPF's breach of the Loan Agreement,
21  and to the extent applicable the July Letter Agreement, IPF has caused damages to the
22  Katersky Parties in an amount to be proved at the time of trial but in excess of the
23  minimum jurisdictional limits of the court.

24  ### FIFTH CLAIM FOR RELIF
25  **(Intentional Infliction of Emotional Distress of Plaintiff Katersky by IPF)**

26  58.   Plaintiff Katersky realleges and incorporates paragraphs 1 through 40
27  above by reference as though fully set forth herein.

28  ///

59.     The conduct of IPF as to Katersky as described above is outrageous in that IPF intentionally and willfully failed to provide the Katersky Parties with information that would allow the Katersky Parties the opportunity to pay off any obligation owed to IPF so that IPF could obtain dominion and control over and to the Policy, and obtain the Policy's benefits, all to the detriment and loss to the Katersky Parties.  IPF's conduct is extreme and outrageous and goes beyond all possible bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community in that IPF knew that Katersky was and is suffering from an inoperable brain tumor, was and is undergoing severe and extensive stem cell treatment at U.C.L.A. hospital and further knew that Katersky was desperately attempting to put his financial affairs in order for the benefit of this wife and children, while facing a life-threatening condition.  Notwithstanding this knowledge, IPF used Katersky's life threatening situation in an attempt to obtain ownership and control of the Policy from the Katersky Parties, by refusing to cooperate with Katersky and the Katersky Parties in their attempt to pay off the IPF loan, and by asserting ownership rights to the Policy, including unilaterally changing the trustee of the trust from the individual trustee to Utah Bank, and by taking efforts to sell the Policy in the "secondary market" for its own benefit and gain.

60.     IPF's extreme and outrageous conduct as set forth above goes beyond mere insults, indignities, threats, annoyances, petty oppressions or other trivialities, but is conduct which would cause an average member of the community to immediately react in outrage, particularly so given the relationship of the parties where IPF has the ability and power to affect Katersky's financial interests and further that IPB knew that Katersky's health conditions placed Katersky in a position that made him susceptible to emotional distress by reason of his particular physical or mental condition.  Yet, IPF proceeded to attempt to deprive Katersky and the Katersky Parties of the benefits of the Policy they desperately need to insure that their financial concerns would be address upon the death of Katersky.

61.     In acting in the manner hereinabove alleged, IPF intended to inflict emotional distress upon Katersky in the IPF knew that such distress was substantially certain to result from IPF's conduct and acted intentional or in reckless disregard of the probability of causing his emotional distress;

62.     As an actual and proximate result of IPF's conduct as hereinabove alleged, Katersky has and is suffering severe or extreme emotional distress, including mental distress, mental suffering and mental anguish, including, nervousness, grief, anxiety, worry, mortification, shock, humiliation and indignity,

63.     As a further actual and proximate result of the emotional distress caused to Katersky by IPF, Katersky has been damaged in an amount in excess of the jurisdictional limits of this court.

64.     IPF's conduct as hereinabove alleged was done, intentionally, willfully, maliciously and with conscious and regardless disregard to the rights of Katersky so has to entitle Katersky to punitive damages as against IPF, in the amount to be determined at the time of trial of this matter.

## SIXTH CLAIM FOR RELIF

### (Negligent Infliction of Emotional Distress of Plaintiff Hal Katersky by IPF)

65.     Plaintiff Hal Katersky realleges and incorporates paragraphs 1 through 40 above by reference as though fully set forth herein.

66.     Alternatively to the Fifth Claim For Relief, Plaintiff Katersky alleges that the conduct of IPF as described above is outrageous in that IPF negligently and with reckless disregard to the rights of Katersky, failed to provide the Katersky Parties with information that would allow the Katersky Parties the opportunity to pay off any obligation owed to IPF so that IPF could obtain dominion and control over and to the Policy, and obtain the Policy's benefits, all to the detriment and loss to the Katersky Parties.

67.     IPF's conduct was extreme and outrageous and goes beyond all possible bounds of decency so as to be regarded as atrocious and utterly intolerable in a

civilized community in that IPF knew that Katersky was and is suffering from an inoperable brain tumor, was and is undergoing severe and extensive stem cell treatment at U.C.L.A. hospital and further, knew that Katersky was desperately attempting to put his financial affairs in order for the benefit of this wife and children, while facing this life threatening condition.    Notwithstanding this knowledge, IPF refused to cooperate with Katersky and the Katersky Parties in their attempt to pay off the IPF loan, and asserted ownership rights to the Policy, including unilaterally changing the trustee of the trust from the individual trustee to Utah Bank, and by taking efforts to sell the Policy in the "secondary market" for its own benefit and gain.

68.    In acting in the manner hereinabove alleged, IPF acted negligently and in reckless disregard of Katersky's rights and in so doing inflicted emotional distress upon Hal Katersky and in reckless disregard of the probability of causing emotional distress to Katersky.

69.    As an actual and proximate result of IPF's conduct as hereinabove alleged, Katersky has and is suffering severe or extreme emotional distress, including mental distress, mental suffering and  mental anguish, including, nervousness, grief, anxiety, worry, mortification, shock, humiliation and indignity,

70.    As a further actual and proximate result of the emotional distress caused to Katersky by IPF, Katersky has been damaged in an amount in excess of the minimum jurisdictional limits of this court.

### SEVENTH CLAIM FOR RELIEF

**(Unfair Business Practices Violation of Cal. Bus. & Prof. Code
§17200, *et seq.* Against Defendants IPF and ILS)**

71.    Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 40 inclusive, as though the same were fully set forth herein.

72.    Defendants IPF and ILS's acts and practices as described herein constitute unlawful, fraudulent, and unfair business practices in violation of California's Business and Professions Code, Sections 17200, et seq., in that (1) the justification for Defendants' IPF and ILS conduct is outweighed by the gravity of the

consequences to Plaintiffs; (2) Defendants' conduct is illegal, immoral, unethical, oppressive, unscrupulous, unconscionable or substantially injurious to Plaintiffs; and/or (3) the uniform conduct of Defendants has a tendency to deceive Plaintiffs.

73.   As set forth above, Defendants IPF and ILS's unlawful, unfair, and fraudulent business acts and practices included but were not limited to attempting to enforce an illegal contract, and further Defendant IPF and ILS actions constituted unlawful business acts and practices pursuant to California Business & Professions Code §17200, *et seq.*, and other similar state unfair competition and unlawful business practices statutes, in that Defendant IPF and ILS assertion that IPF and or ILS is the owner of the Policy has prevented the Katersky Parties from obtaining clear and unencumbered ownership of the Policy, and further that IPF  is asserting interests in and to the Policy precluded by law.

74.   Pursuant to California Business and Professions Code §§17200 and 17203, Plaintiffs seek relief in the form of damages, injunctive relief and for recovery of reasonable attorney fees and costs, all as afforded by statute.

## EIGHTH CLAIM FOR RELIEF

**(For Elder Abuse by Hal Katersky as Against Defendants IPF and ILS)**

75.   Plaintiffs reallege and incorporate paragraphs 1 through 40 above by reference as though fully set forth herein.

76.   As set forth herein, the conduct of IPF and ILS in attempting to obtain dominion and control over the Policy, to the detriment of Katersky, under California law constitutes Elder Abuse as that term is defined in California Civil Code Sections 1575, and 3345 and California Welfare and Institutions Code Section 1561010.30 ("Financial Abuse")

77.   Defendants IPF and ILS knew that their conduct was directed to Katersky, who by definition under California's Civil Code and Welfare and Institutions Code is a "senior citizen" being over 70 years of age, and further knew that their conduct caused and will cause and is intended to cause a substantial loss of

1  personal property that is to be used for family care and maintenance of the Katersky
2  Parties, and that IPF and ILS's conduct was done for a wrongful use or with the intent
3  to defraud or both.

4    78.    Defendants IPF and ILS's conduct, as hereinabove alleged, was intended
5  to and did cause Katersky to suffer substantial physical, emotional and economic
6  damages and IPF and ILS knew or should have known that their conduct is likely to
7  be harmful to Katersky.

8    79.    As a proximate result of the Defendants IPF and ILS's wrongful conduct,
9  Plaintiff Katersky has sustained and will sustain substantial economic losses and other
10 general and specific damages all an amount to be determined according to proof.

11   80.    As a further proximate result of Defendants IPF and ILS's wrongful
12 conduct, Plaintiff Katersky has sustained great emotional pain and mental suffering,
13 all in an amount to be determined according to proof.

14   81.    The actions taken by Defendants IPF and ILS, set forth above, were in all
15 respects reckless, malicious, willful and oppressive, and manifested either disregard or
16 contempt for the rights of Hal Katersky.

17   82.    Defendants IPF and ILS were fully cognizant of the position of trust in
18 which they stood.

19   83.    Based upon IFP and ILS's conduct has hereinabove alleged, Katersky is
20 entitled to an award of punitive and exemplary damages as well as attorneys' fees, in
21 an amount according to proof at the time of trial.

22   84.    As the subject transactions involved senior citizens, Katersky is further
23 entitled to treble damages and penalties pursuant to Civil Code section 3345 because
24 defendants IPF and ILS knew or should have known that their conduct was directed to
25 one or more senior citizens.

26 ///
27 ///
28 ///

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

## FIRST CLAIM FOR RELIEF

### (For Declaratory Relief)

1.      Entry of an Order by this Court declaring that:

(a) The Katersky Parties are the owners, and beneficiaries, of the Policy;

(b) IPF's only rights are to receive repayment of any amounts paid by IPF to Lincoln or to the Katersky Parties in regard to the financing of the policy and that IPF must provide the Katersky Parties with a proper demand for repayment of its obligations and that IPF has no other interest in or to the Policy;

(c) Barry Lavine is the individual Trustee for the Trust;

(d) Bank of Utah is not a Trustee of the Trust;

(e) Lincoln is bound to honor the terms and conditions of the Policy as to the Katersky Parties;

(f) ILS has no right, title or interest in the Policy.

## SECOND CLAIM FOR RELIEF

### (For Temporary Restraining Order and Preliminary Injunction Against All Defendants)

2.      For a temporary restraining order and preliminary injunction, restraining and enjoining Defendants, and each of them, from selling, transferring, assigning, or other attempting to exert dominion and control over the Policy, during the pendency of this action.

## THIRD CLAIM FOR RELIEF

### (For Fraud Against Defendant IPF)

3.      For damages according to proof;

4.      For punitive damages according to proof.

## FOURTH CLAIM FOR RELIEF

**(Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing Against IPF)**

    5.    For damages according to proof;

    6.    For reasonable attorney fees and costs.

## FIFTH CLAIM FOR RELIF

**(Intentional Infliction of Emotional Distress of Plaintiff Hal Katersky by IPF)**

    7.    For damages according to proof;

    8.    For punitive damages according to proof.

## SIXTH CLAIM FOR RELIF

**(Negligent Infliction of Emotional Distress of Plaintiff Hal Katersky by IPF)**

    9.    For damages according to proof;

## SEVENTH CLAIM FOR RELIEF

**(Unfair Business Practices Violation of Cal. Bus. & Prof. Code §17200, *et seq.* Against all Defendants IPF and ILS)**

    11.    For damages according to proof as allowed by statute;

    12.    For declaratory and injunctive relief as allowed by statute;

    13.    For reasonable attorney fees and costs as allowed by statute.

## EIGHTH CLAIM FOR RELIEF

**(For Elder Abuse by Hal Katersky as Against Defendants IPF and ILS)**

    14.    For damages according to proof;

    15.    For punitive damages according to proof;

    16.    For treble damages as allowed by statute;

    17.    For reasonable attorney fees and costs as allowed by statute.

## ON ALL CLAIMS FOR RELIEF

    18.    For reasonable attorney fees;

    19.    For costs of suit incurred;

///

20. For interest as allowed by law;

21. For such other and further relief as the Court deems just and proper.

Dated:  May 23, 2012

EZRA BRUTZKUS GUBNER LLP

By:

LARRY W. GABRIEL

Attorneys for Plaintiffs Hal Katersky, Barry Lavine, as the individual trustee of the Amended and Restated Hal Katersky Irrevocable Life Insurance Trust, Hillary A. Katersky, Andrew Katersky, Robin Katersky, Jeffrey Katersky, and Dylan Zelman

23

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.


Dated:  May 23, 2012                              EZRA BRUTZKUS GUBNER LLP

                                                 By: _____
                                                     LARRY W. GABRIEL

STATE OF UTAH:

COUNTY OF SALT LAKE:

### AMENDED AND RESTATED HAL KATERSKY
### IRREVOCABLE LIFE INSURANCE TRUST

This Amended and Restated Trust Agreement of the HAL KATERSKY IRREVOCABLE LIFE INSURANCE TRUST (the "Trust Agreement"), dated as of September 21, 2008, between Hal Katersky (the "Settlor"), Barry Lavine (the "Trustee"), Bank of Utah (the "Independent Professional Trustee") and Hillary A. Katersky, Andrew Katersky, Robin Katersky, Jeffrey Katersky and Dylan Zelman, as beneficiaries (the "Beneficiaries"), amends and restates in its entirety that certain Trust Agreement of the Trust, dated as of August 29, 2008 (as so amended, the "Original Trust Agreement"). Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Loan Application and Agreement (as defined herein).

### WITNESSETH:

WHEREAS, the Settlor and the Trustee duly declared and established the HAL KATERSKY IRREVOCABLE LIFE INSURANCE TRUST (the "Trust") pursuant to the Original Trust Agreement.

WHEREAS, the Settlor, the Trustee and the Beneficiaries desire to amend and restate in its entirety the Original Trust Agreement by entering into this Trust Agreement to set forth the terms of the Trust and the respective rights and obligations of the Trustee, the Settlor and the Beneficiary hereunder.

NOW, THEREFORE, in consideration of the mutual agreements herein contained, and of other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, and it being the intention of the parties hereto that this Trust Agreement constitute the governing instrument of such trust, the parties hereto agree as follows:

### ARTICLE I

### IRREVOCABILITY

The Trust hereby continued shall be irrevocable, and the Settlor hereby expressly waives all rights and powers, whether alone or in conjunction with others, and regardless of when or from what source the Settlor may heretofore or hereafter have acquired such rights or powers, to alter, amend, revoke, or terminate the Trust, or any of the terms of this Trust, in whole or in part.

### ARTICLE II

### TRUST DISTRIBUTIONS

2.1    As of the date hereof, the Beneficiaries are Hillary A. Katersky, Andrew Katersky, Robin Katersky, Jeffrey Katersky and Dylan Zelman. The settlor is married to Hillary A. Katersky, and all references in this trust instrument to the settlor's wife are to her or to whomever the settlor was living with and married to as husband and wife at the time of the settlor's death and with whom the settlor was not involved in any proceedings of marital dissolution at the time of the senior's death.

25

EXHIBIT "1"

(a)   Identification of Living Children. The settlor has three living children, as follows:

| Name | Date of Birth |
|------|---------------|
| Andrew Katersky | 8/24/1970 |
| Robin Katersky | 9/14/1972 |
| Jeffrey Katersky | 9/21/1980 |

(1)   Hillary A. Katersky has one child from a prior marriage, namely Gillian Zelman, who shall be treated as if she predeceased both the settlor and Hillary A. Katersky. The settlor intends to treat Dylan Zelman (born February 17, 2006) as one of his children and as an equal beneficiary in the same manner provided to a child who is a beneficiary in Articles Four, Five and Six below.

(b)   No Deceased Children. The settlor has no deceased children, notwithstanding the treatment of Gillian Zelman.

(c)   Definitions of Child, Children, and Issue. As used in this instrument, the terms "child" and "children" refer to natural children whenever born to the settlor and to children who have been legally adopted during minority by the parent or parents from or through whom their right to inherit or to take is determined or derived, and the term "issue" refers to all lineal descendents of all generations, with the relationship of parent and child at each generation being determined by the definitions of "child" and "children" set forth in this instrument. Gillian Zelman is not intended to be included in the definition of a "child" of the Settlor. Dylan Zelman is intended to be included in the definition of "child" and "children".

2.2   During the term of any Policy Loan, the Trustee shall accumulate all of the net income of the Trust with respect to any asset of the Trust in its possession, if any, and add it to the principal of the Trust. At any time when there is no Policy Loan outstanding:

(a)   So long as the settlor is living, the trustee shall apply so much of the net income of the trust, if any, remaining after the withdrawals provided in Article IX, and if the remaining net income of the trust is insufficient for this purpose, so much of the principal of the trust remaining after the withdrawals provided in section 4.1, as may be necessary to pay the premiums on any and all policies of life insurance on the settlor's life which are part of the trust estate.

(b)   If any income remains after those withdrawals and those payments, the trustee shall pay to or apply for the benefit of the settlor's wife during her lifetime as much of the net income of the trust in the trustee's discretion as the trustee deems necessary for the health, education, support, and maintenance of the settlor's wife. However, if the settlor survives his wife, then, during the lifetime of the settlor, the trustee shall instead make these discretionary payments of excess income to or apply for the benefit of the settlor's then-living children and the then-living issue of any then-deceased children, under the same restrictions. In making these payments, the trustee may pay to or apply more for some beneficiaries than for others, and may make payments to or for one or more beneficiaries to the exclusion of others.

(c)   All decisions of the trustee regarding payments under this subsection, if any, are within the trustee's discretion and shall be final and incontestable by anyone. All payments made pursuant to this provision shall be made in monthly or other convenient installments, but not less often than annually. The trustee shall accumulate and add to principal any net income not distributed.

     (d)     Notwithstanding anything in this Trust Agreement to the contrary, when referring to any power, right or duty of the Trustee references to "net income," "income," or "principal" of the Trust shall only mean net income, income or principal of the Trust with respect to any asset of the Trust in the Trustee's possession.

     (e)     <u>Distribution to Issue.</u> Whenever a division of property is specified to be made under this instrument among the issue of an individual in the manner set forth in California Probate Code Section 246, the distribution shall be made as described in this section. The individual is referred to in this section as the Designated Ancestor. The first division shall be made at the generation of issue with members who survive the Designated Ancestor that is nearest in degree to the Designated Ancestor. The property shall be divided into as many equal shares as there are members of that generation who survive the Designated Ancestor plus deceased members of that generation who leave issue who survive the Designated Ancestor. Each member of that generation who survives the Designated Ancestor shall receive one such equal share. The equal share of each deceased member of that generation who leaves issue who survive the Designated Ancestor shall in turn be divided among that deceased member's issue who survive the Designated Ancestor in the manner described in this section as if the deceased member were the Designated Ancestor as to that share.

     (f)     <u>Gifts to Heirs.</u> For any gift to "heirs" of the settlor that is made in this instrument, those heirs shall be determined as if the settlor had died intestate at the time for distribution prescribed in this instrument, and the identity and shares of those heirs shall be determined according to the California laws of succession that concern separate property not acquired from a previously deceased spouse and that are in effect at the time the settlor is deemed to have died.

2.3     Upon the Settlor's death, the Trustee shall first pay all outstanding debts and obligations of the Trust, including the Policy Loan, in full from trust property in its possession and thereafter distribute any remaining trust property, together with any property received from the Independent Professional Trustee pursuant to Sections 6.4 or 10.1(b) hereof to the Beneficiaries as follows:

     (a)     <u>Disposition of Trust Estate If Settlor Is Survived by Wife.</u> If the settlor is survived by his wife, then on the death of the settlor, the trust estate shall be held, administered, and distributed according to the terms of the Trust for wife *as* set forth in Article Six.

     (b)     <u>Disposition of Trust Estate If Settlor Is Not Survived by Wife.</u> If the settlor is not survived by his wife, then if any issue of the settlor survive the settlor, the trustee shall divide the trust property (including all income then accrued but uncollected and all income then remaining in the hands of the trustee) into shares of equal market value as are necessary to create one share for each of the settlor's children who survive him and one share for each of the settlor's children who predecease him but who leave issue surviving him with those issue to take their shares in the manner provided in California Probate Code Section 246, as defined in the Article entitled "Concluding Provisions" of this instrument; the trustee shall treat Dylan Zelman as if he were the settlor's child rather than as the settlor's grandchild. The share created for each of those issue shall be held, administered, and distributed in a separate trust for that issue according to the terms set forth in Article Six applicable to the Sprinkling Trust. If none of the issue of the settlor survive him, the trust property shall be distributed outright to the settlor's heirs.

     (c)     <u>Trust for Wife: Disposition of Trust Until Wife's Death.</u> After the settlor's death and during the lifetime of the settlor's surviving wife, the trustee shall hold, administer, and distribute the assets of the Trust for the settlor's wife as follows:

(d)    Discretionary Payment of Income and Principal by Trustee. At any time or times, the trustee shall pay to or apply for the benefit of the settlor's wife so much of the net income and principal of the trust as the trustee deems proper to pay the reasonable expenses of the settlor's wife for her health, education, support, and maintenance. In exercising discretion, the trustee shall give the consideration that the trustee deems proper to all other income and resources that are then known to the trustee and that are readily available to the settlor's wife for use for these purposes. All decisions of the trustee regarding payments under this section, if any, are within the trustee's discretion and shall be final and incontestable by anyone. The trustee shall accumulate and add to principal any net income not distributed.

(e)    Trust for Wife: Disposition of Trust on Wife's Death. On the death of the settlor's wife, the trustee shall hold, administer, and distribute the assets of the Trust for Wife as follows:

(1)    If any children of the settlor survive the settlor's wife, the trustee shall divide the trust property (including all income then accrued but uncollected and all income then remaining in the hands of the trustee) into as many shares of equal market value as are necessary to create one share for each of the settlor's children then living and one share for each of the settlor's children who are then deceased but who leave issue then living. The trustee shall distribute one share outright to each of the settlor's then-living children who has attained the age of twenty-five (25), and the trustee shall distribute each share created for a then-deceased child outright to the then-living issue of that child who has attained the age of twenty-five (25), with those issue to take that share in the manner provided in California Probate Code Section 246, as defined in the Article entitled "Concluding Provisions" of this instrument.

(2)    If a child of the settlor (for example, Dylan Zelman) survives the settlor's wife and is under the age of twenty-five (25) years at the time of the death of the settlor's wife, the property shall be held, administered, and distributed by the trustee, in trust, according to the terms set forth in this Article Six applicable to the Sprinkling Trust.

(3)    If no child of the settlor survives the settlor's wife but issue of the settlor are then living, the trustee shall distribute the trust property outright to those issue who has attained the age of twenty-five (25), who are to take that property in the manner provided in California Probate Code Section 246, as defined in the Article entitled "Concluding Provisions" of this instrument. The property shall be held, administered, and distributed by the trustee, in trust, according to the terms set forth in this Article Six applicable to the Sprinkling Trust for any such issue who has not attained the age of twenty-five (25).

(4)    If no issue of the settlor survive the settlor's wife, the trustee shall distribute the property outright to the settlor's heirs.

(f) Sprinkling Trust. The trustee shall hold, administer, and distribute the assets of the Sprinkling Trust as follows:

(1)    Discretionary Payments Before Division Into Shares. At any time or times before the division of the trust into shares as provided below in this section, the trustee shall pay to or apply for the benefit of any one or more of the settlor's then-living children and the then-living issue of any then-deceased children of the settlor so much of the net income and principal of the trust as the trustee deems proper for the health, education, support, and maintenance of each of them. In making these payments, the trustee may pay or apply more for some beneficiaries than for others, and may make payments to or for one or more beneficiaries to the exclusion of others. No amount paid or applied need thereafter be repaid to the trustee or

restored to the trust. In exercising discretion, the trustee shall give the consideration that the trustee deems proper to all other income and resources that are known to the trustee and that are readily available to the beneficiaries for use for these purposes. All decisions of the trustee regarding payments under this subsection, if any, are within the trustee's discretion and shall be final and incontestable by anyone. The trustee shall accumulate and add to principal any net income not distributed.

(2)     <u>Division of Trust Into Shares When There Is No Living Child Under Age Eighteen</u>. When there is no living child of the settlor under eighteen (18) years of age, the trustee shall divide the trust property (including all income then accrued but uncollected and all net income then remaining in the hands of the trustee) into *as* many shares of equal market value as are necessary to create one share for each of the settlor's children then living and one share for each of the settlor's children then deceased who leave issue then living. The trustee shall distribute each share for the then-living issue of each of the settlor's then-deceased children outright to those issue, who are to take that share in the manner provided in California Probate Code Section 246, as defined in the Article entitled "Concluding Provisions" of this instrument. Each share created for a then-living child of the settlor shall be allocated to an individual trust for that child, to be held, administered, and distributed by the trustee as set forth below in this section. However, if none of the settlor's children are living at the time that the trust property would otherwise be divided into shares pursuant to the foregoing provisions of this subsection, instead of dividing the property into shares and distributing or allocating it in the manner provided above, the trustee shall distribute all of the trust property outright to the settlor's then-living issue in the manner provided in California Probate Code Section 246, as defined in the Article entitled "Concluding Provisions" of this instrument.

(3)     <u>Discretionary Payments of Individual Trusts</u>. At any time or times during the term of the individual trust to be created for each of the then-living children of the settlor, the trustee shall pay to or apply for the benefit of the child so much of the net income and principal of the individual trust as the trustee deems proper for the child's health, education, support, and maintenance. In exercising discretion, the trustee shall give the consideration that the trustee deems proper to all other income and resources that are known to the trustee and that are readily available to the child for use for these purposes. All decisions of the trustee regarding payments under this subsection, if any, are within the trustee's discretion and shall be final and incontestable by anyone. The trustee shall accumulate and add to principal any net income not distributed.

(4)     <u>Distribution of Individual Trusts in Lump Sum</u>. When a child (including, for example, Dylan Zelman) reaches the age of twenty-five (25) years, the trustee shall distribute outright to the child all of the income and principal of the child's individual trust. The individual trust shall terminate when the child reaches the age of twenty-five (25) years, or the death of the child, whichever occurs first. If the trust terminates on the death of the child, the trustee shall distribute the remaining trust property to the then-living issue of the child in the manner provided in California Probate Code Section 246, as defined in the Article entitled "Concluding Provisions" of this instrument. If a child has already reached the age of twenty-five (25) years when the Sprinkling Trust is divided into individual trusts, then on making the division, the trustee shall distribute outright to the child all of the child's share.

(5)     <u>Final Disposition</u>. If the trust property is not completely disposed of by the preceding provisions, the undisposed-of portion shall be distributed outright to the settlor's heirs.

29

(6)    Administration of Generation-Skipping Trusts. The provisions of this section apply to any trust under this instrument in which there is property that is or may become subject to the federal generation-skipping transfer tax:

(a)    Allocation of Exemption to Part of Trust. On written notification by the settlor that the settlor intends, or by the settlor's executor that the executor intends, to allocate any part of the generation-skipping transfer tax exemption that is available to the settlor under Internal Revenue Code Section 2631(a) to some but not all of the property in any trust to which this section applies, the trustee shall divide that trust into two separate trusts, to be designated as the Exempt Trust and the Nonexempt Trust. The Exempt Trust shall contain the share of the property of that trust consisting of a pecuniary amount equal in value to the amount of the generation-skipping transfer tax exemption that the settlor or executor intends to allocate to that trust. The Exempt Trust shall have an inclusion ratio of zero (0) for federal generation-skipping transfer tax purposes. The Nonexempt Trust shall contain the balance of the property of that trust and shall have an inclusion ratio of one (1) for federal generation-skipping transfer tax purposes. It is the settlor's intention that the settlor or executor then actually allocate the generation-skipping transfer tax exemption to the Exempt Trust and not to the Nonexempt Trust. The trustee shall not be liable for relying on the written instructions of the settlor or the executor when acting in accordance with the provisions of this subsection.

(b)    Method of Allocation. In allocating assets between the Exempt Trust and Nonexempt Trust for purposes of this section, the trustee shall allocate the trust assets in cash or in kind, or partly in each, on a pro rata or non pro rata basis, and in undivided interests or not. If the allocation is not made within 15 months from the date of the settlor's death, the trustee shall pay interest, at the legal rate, from the date of the settlor's death to the date of distribution. Assets shall be valued at their values on the date or dates of distribution.

(c)    Allocation or Nonallocation of Exemption to Entire Trust. Regardless of whether subsection (a) applies, if the amount of the settlor's generation-skipping transfer tax exemption actually allocated to a trust to which this section applies is equal to the value of the property of that trust so that the entire trust has an inclusion ratio of zero (0) for federal generation-skipping transfer tax purposes, the entire trust shall be referred to as the Exempt Trust. On the other hand, if no part of the settlor's generation-skipping transfer tax exemption is actually allocated to the trust so that the entire trust has an inclusion ratio of one (1) for federal generation-skipping transfer tax purposes (or if the settlor is not the transferor of that trust for generation-skipping transfer tax purposes), the entire trust shall be referred to as the Nonexempt Trust.

(d)    Trust Distributions. The trustee may, but is not required to, administer the trusts under this instrument to which this section applies in such a manner that Revenue Code Section 2613(a) or any equivalent successor statute) are made from Exempt Trusts, and distributions made during the trust terms to "non-skip persons" (as defined in Internal Revenue Code Section 2613(b) or any equivalent successor section) are made from Nonexempt Trusts.

(e)    Trustees's Power to Petition Court to Amend Nonexempt Trust If the trustee determines that the burden of generation-skipping transfer taxes, income taxes, gift taxes and death taxes on a Nonexempmt Trust, the settler, the settlor's estate, or the beneficiaries of that trust would be reduced, the trustee may petition the court to amend the trust to grant one or more trust beneficiaries who are non-skip persons in a generation below the settler a general testamentary power of appointment over all or a specified portion of that Nonexempt Trust. Any power to amend the trust within the discretion of the court, and the preceding sentence shall not be construed to give the trustee any power that the trustee does not already have under California

trust law to petition the court under the appropriate circumstances, nor shall it be construed to limit the power of the trustee or any beneficiary under California trust law to petition the court under the appropriate circumstances.

(f)   Purpose of Section. The purpose of this section is to allow the trustee to administer the trusts so as to decrease the amount of generation-skipping transfer taxes owed on transfers from the trusts. The trustee shall balance that consideration against any other tax and non-tax considerations, and may disregard the generation-skipping transfer tax consequences to the extent that the trustee determines that doing so will allow the trustee to carry out the settlor's intentions in creating the trusts. All decisions of the trustee under this subsection are within the trustee's discretion and shall be final and incontestable by anyone.

(g)   Amendment of Trust to Reflect Changes in Tax Law. If, in the judgment of the executor or the trustee, at any time after the execution of this trust instrument, any statute, regulation, court decision, or administrative ruling imposes different or additional requirements on the trust in connection with the generation-skipping transfer tax the executor or the trustee may petition the court to amend the terms of the trust to meet those requirements and achieve the purpose of this section.

## ARTICLE III

## PURPOSE

The exclusive purposes and functions of the Trust are to purchase, obtain and maintain any policy or policies of insurance on the Settlor's life (the "Policy") and to enter into and perform its obligations under the Policy Loan Documents.

## ARTICLE IV

## TRUSTEE

**4.1   Appointment of Trustee.**  The Settlor hereby confirms the appointment of Barry Lavine as Trustee of the Trust, and Barry Levine hereby confirms its acceptance of such appointment.

**4.2**   "Reserved."

**4.3   Powers and Duties of Trustee.**  The Trustee shall have the following duties and powers, in addition to all of the powers now or hereafter conferred on trustees by law, with respect to administration of the Trust:

(a)   With or without court authorization, sell (for cash or on deferred payments, and with or without security), convey, exchange, partition, and divide trust property; grant options for the sale or exchange of trust property for any purpose, whether the contract is to be performed or the option is to be exercised within or beyond the term of the trust; and lease trust property for any purpose, for terms within or extending beyond the expiration of the trust, regardless of whether the leased property is commercial or residential and regardless of the number of units leased.

(b)   Manage, control, improve, and maintain all real and personal trust property.

31

(c)     Subdivide or develop land; make or obtain the vacation of plats and adjust boundaries, or adjust differences in valuation on exchange or partition by giving or receiving consideration; and dedicate land or easements to public use with or without consideration.

(d)     Make ordinary or extraordinary repairs or alterations in buildings or other trust property, demolish any improvements, raze existing party walls or buildings, and erect new party walls or buildings, as the trustee deems advisable.

(e)     Employ and discharge agents and employees, including but not limited to attorneys, accountants, investment and other advisers, custodians of assets, property managers, real estate agents and brokers, and appraisers, to advise and assist the trustee in the management of any trusts created under this trust instrument, and compensate them from the trust property. The trustee is entitled to rely on the advice of any professional advisers employed under this provision. Reasonable compensation paid to any such agents or employees shall not diminish the compensation to which the trustee is otherwise entitled.

(f)     With respect to securities held in trust, exercise all the rights, powers, and privileges of an owner, including, but not limited to, the power to vote, give proxies, and pay assessments and other sums deemed by the trustee necessary for the protection of the trust property; participate in voting trusts, pooling agreements, foreclosures, reorganizations, consolidations, mergers, and liquidations, and, in connection therewith, deposit securities with and transfer title to any protective or other committee under such terms as the trustee deems advisable; exercise or sell stock subscription or conversion rights; and accept and retain as investments of the trust any securities or other property received through the exercise of any of the foregoing powers.

(g)     Hold securities or other trust property in the trustee's own name or in the name of a nominee, with or without disclosure of the trust, or in unregistered form, so that title may pass by delivery.

(h)     Deposit securities in a securities depository that is either licensed or exempt from licensing.

(i)     For so long as the Policy Loan is not outstanding, borrow money for any trust purpose from any person or entity, including one acting as trustee hereunder, on such terms and conditions as the trustee deems advisable, and obligate the trust for repayment; encumber any trust property by mortgage, deed of trust, pledge, or otherwise, whether for terms within or extending beyond the term of the trust, as the trustee deems advisable, to secure repayment of any such loan; replace, renew, and extend any such loan or encumbrance; and pay loans or other obligations of the trust deemed advisable by the trustee.

(j)     Procure and carry, at the expense of the trust, insurance in such forms and in such amounts as the trustee deems advisable to protect the trust property against damage or loss, and to protect the trustee against liability with respect to third persons.

(k)     Enforce any obligation owing to the trust, including any obligation secured by a deed of trust, mortgage, or pledge held as trust property, and purchase any property subject to a security instrument held as trust property at any sale under the instrument.

(l)     The trustee shall have the power to enter into oil, gas, and other mineral leases, on terms deemed advisable by the trustee; enter into any pooling, unitization, repressurization,

community, or other types of agreements relating to the exploration, development, operation, and conservation of mineral properties; drill, mine, and otherwise operate for the development of oil, gas, and other minerals; contract for the installation and operation of absorption and repressuring plants; and install and maintain pipelines. Any such leases or agreements may be for a term within or extending beyond the term of the trust.

(m)     The trustee shall have the power, in the trustee's discretion, to abandon any unproductive or wasted trust asset or interest therein.

(n)     Extend the time for payment of any note or other obligation held as an asset of, and owing to, the trust, including accrued or future interest, and extend the time for repayment beyond the term of the trust.

(o)     Pay or contest any claim against the trust; release or prosecute any claim in favor of the trust; or, in lieu of payment, contest, release, or prosecution, adjust, compromise, or settle any such claim, in whole or in part, and with or without consideration.

(p)     At trust expense, prosecute or defend actions, claims, or proceedings of whatever kind for the protection of the trust property and of the trustee in the performance of the trustee's duties, and employ and compensate attorneys, advisers, and other agents as the trustee deems advisable.

(q)     Power to Lend Money to Estate or Trust. The trustee shall have the power, in the trustee's discretion, to lend money from the trust estate to the probate estate of the settlor, or to any trust created by the settlor that is included in the taxable estate of the settlor for federal estate tax purposes, irrespective of whether the trustee and the executor may be the same person, provided that any such loan is adequately secured and bears a reasonable rate of interest.

(r)     Power to Purchase Property From Estate or Trust of Settlor. The trustee shall have the power, in the trustee's discretion, to use funds or credit of the trust estate to purchase property from the probate estate of the settlor, or from any trust created by the settlor that is included in the taxable estate of the settlor for federal estate tax purposes, at its fair market value as determined by the trustee in the trustee's discretion.

(s)     Power to Deal With Personal Representative. The trustee shall have the power to engage in any transactions with the personal representative of the estate of the settlor that are in the best interests of any trusts created in this instrument.

(t)     Power to Retain Trust Property. The trustee shall have the power to retain property received into the trust at its inception or later added to the trust, as long as the trustee considers that retention in the best interests of the trust or in furtherance of the goals of the settlor in creating the trust, as determined from this trust instrument, but subject to the standards of the prudent investor rule as set forth in the California Uniform Prudent Investor Act, as amended from time to time.

(u)     Trustee's Power to Invest Property. Subject to the standards of the prudent investor rule as stated in the California Uniform Prudent Investor Act, as amended from time to time, the trustee shall have the power to invest and manage the trust assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust.

(v)     <u>Power Over Unproductive Property.</u> The trustee shall have the power to retain or acquire unproductive or underproductive property.

(w)     <u>Power to Combine Trust Assets.</u> Each trust created under this instrument shall constitute a separate trust and be administered accordingly; however, the assets of all of the trusts may be combined for bookkeeping purposes and held for the trust beneficiaries without physical division into separate trusts until time of distribution.

(x)     <u>Division or Distribution in Cash or Kind.</u> In order to distribute or divide trust assets into shares or partial shares, the trustee may distribute or divide those assets in kind, or divide undivided interests in those assets, or sell all or any part of those assets and distribute or divide the property in cash, in kind, or partly in cash and partly in kind. This section shall apply only to the extent that it does not conflict with the provisions in this instrument specifying allocation of assets involving generation-skipping trusts.

(y)     <u>Payments to Legally Incapacitated Persons.</u> If at any time any trust beneficiary is a minor, or it appears to the trustee that any trust beneficiary is incapacitated, incompetent, or for any other reason not able to receive payments or make intelligent or responsible use of the payments, then the trustee, in lieu of making direct payments to the trust beneficiary, may make payments to the beneficiary's conservator or guardian; to the beneficiary's custodian under the Uniform Gifts to Minors Act or Uniform Transfers to Minors Act of any state; to the beneficiary's custodian under the California Uniform Transfers to Minors Act until the beneficiary reaches the age of twenty-five (25); to one or more suitable persons as the trustee deems proper, such as a relative of or a person residing with the beneficiary, to be used for the beneficiary's benefit; to any other person, firm, or agency for services rendered or to be rendered for the beneficiary's assistance or benefit; or to accounts in the beneficiary's name with financial institutions. If there is no custodian then-serving or nominated to serve by the settlor for a beneficiary, the personal representative or trustee, as the case may be, shall designate the custodian. The receipt of payments by any of the foregoing shall constitute a sufficient acquittance of the trustee for all purposes.

(z)     <u>Grant of Specific Powers Not to Limit Exercise of General Powers.</u> The enumeration of specific powers under this trust instrument shall not limit the trustee from exercising any other power with respect to any trusts created by this trust instrument that may be necessary or appropriate for the trustee to have and exercise in order to carry out the purposes of the trusts or to permit the trustee to fulfill the trustee's responsibilities and duties with respect to the trust.

(aa)    <u>Trust Distributions Shall Not Discharge Obligations of Support.</u> Notwithstanding any other provision of this trust instrument, no income or principal of the trust shall be used to discharge, in whole or in part, the legal obligation of the trustee to support or educate any beneficiary of this trust. In determining the legal obligation of the trustee to support and educate a beneficiary of this trust, the existence of this trust and the funds made available under it shall not be taken into account.

(bb)    <u>Limitations on Trustee's Powers.</u> Notwithstanding any other provision of this instrument, the powers of the trustee shall be subject to the following limitations:

(1)     The trustee shall have no power or discretion with respect to any life insurance policy on the life of the trustee that constitutes an incident of ownership (as that term is used in Internal Revenue Code Section 2042, as amended) in that policy;

(2)     The trustee shall have no power or discretion with respect to the distribution of income or principal to or for the trustee's benefit, or in satisfaction of the trustee's legal obligations;

(3)     If the trustee would, but for this provision, have had any power or discretion described in (a) or (b), above, that power or discretion shall be exercised by the cotrustee, if any, and if there is no cotrustee, by the next-named successor trustee acting as special cotrustee. If the next-named successor trustee shall for any reason fail to qualify or cease to act as special cotrustee, the next-named successor trustee shall act as successor special cotrustee. If all named successor trustees shall for any reason fail to qualify or cease to act as special cotrustee, the trustee shall appoint a successor special cotrustee, other than the trustee so appointing. The responsibilities of the special cotrustee shall be limited to the exercise of powers and discretions under this section.

(cc)    Duty to Account. The trustee shall render accounts at least annually, at the termination of a trust, and on a change of trustees, to the persons and in the manner required by law.

**4.4      Resignation and Appointment of Trustee.**

(a)    The Trustee may resign at any time without giving a reason for the resignation, by giving written notice, at least thirty (30) days before the time the resignation is to take effect, to the settlor, if living, to any other trustee then acting, to any persons authorized to designate a successor trustee, to all trust beneficiaries known to the trustee (or, in the case of a minor beneficiary, to the parent or guardian of that beneficiary) and to the successor trustee. A resignation shall be effective on written acceptance of the trust by the successor trustee.. No resignation of the Trustee shall become effective until the appointment of a successor Trustee in accordance with the terms of Section 4.4(b).

(b)    If the Barry Lavine as an initial trustee named in Article One dies, becomes incapacitated, or is otherwise unable or unwilling to act as trustee, the successor trustee shall be Monica Brown of Los Angeles, California. If Monica Brown is unwilling or unable to serve as successor trustee, a new trustee shall be appointed by the last serving trustee and if no such appointment is made, then by the court. At no time shall the settlor's wife ever have the power to appoint a successor trustee or co-trustee. Notwithstanding any other provision in this instrument, in no event shall the settlor or the settlor's wife be appointed to serve as sole trustee or successor sole trustee. Notwithstanding any other provision in this instrument, in no event shall any person or entity who is related or subordinate to any insured or settlor within the meaning of I.R.C. Section 672(c) be appointed to serve *as* the successor trustee.

(c)    To the extent a Independent Professional Trustee is serving hereunder pursuant to Section 5.1 hereof, the Trustee and any successor Trustee shall provide written notice to the Independent Professional Trustee of the resignation of the Trustee and the appointment of a successor Trustee within five (5) Business Days of any such resignation and appointment.

**4.5      Other.**

(a)    Waiver of Bond. No bond or undertaking shall be required of any individual who serves as a trustee under this instrument.

(b)    <u>Additions to Trust.</u> From time to time, the trustee may accept additions to this trust from any source. All such additions shall become part of the trust estate and shall be held, administered, and distributed in accordance with the terms of this instrument. That additional property shall become part of the trust estate on written acceptance of it by the trustee. Any additions to the trust shall be made by designating in writing the property to be added. However, the titling of any account, deed, or similar asset in the name of the trustee, as trustee of this trust, or any alternate or successor trustee acting under this instrument, shall be deemed to be a transfer to this trust. Any designation by a third party, whether by will, deed, account title designation, or similar transfer, shall also be a transfer to the trust estate.

(c)    <u>Definition of Trust Estate.</u> All property subject to this instrument from time to time is referred to as the "trust estate this instrument. The trustee shall hold, administer, and distribute the property of this trust, any other property that may become subject to this trust, and the income and proceeds attributable to " and shall be held, administered, and distributed as provided in all such property, in accordance with the provisions of this instrument.

(d)    <u>Limitation on Powers of Settlor.</u> Notwithstanding any other provision of this instrument, the Settlor shall not have:

(1)    Any right to the possession or enjoyment of the principal or income of the trust estate, or any part of the trust estate, or any right, either alone or in conjunction with any other person, to designate the persons who will possess or enjoy the principal or income of the trust estate, or any part of the trust estate, as those terms are used in Internal Revenue Code Section 2036.

(2)    Any right to vote (directly or indirectly) any shares of stock of a controlled corporation, as that term is defined in Internal Revenue Code Section 2036(b)(2), that may be part of the trust estate.

(3)    Any power or discretion in any capacity whatever, either alone or in conjunction with any other person, to alter, amend, revoke, or terminate the enjoyment of the trust estate, as those terms are used in Internal Revenue Code Section 2038.

(4)    Any power that is exercisable in favor of the settlor, the senior's estate, the settlor's creditors, or creditors of the settlor's estate, or any other power that would constitute a general power of appointment, as defined in Internal Revenue Code Section 2041.

(5)    Any incidents of ownership, as that term is defined in Internal Revenue Code Section 2042, as amended, in any insurance policy that is part of the trust estate.

(6)    Any power or discretion that would cause the trust estate, or any part of the trust estate, to be included in the gross estate of the settlor under any provisions of the Internal Revenue Code, as amended.

4.6    <u>Limited Applicability.</u> Notwithstanding anything to the contrary contained in this Trust Agreement, any powers, rights or duties of the Trustee set forth in the provisions of this Article IV shall only apply to the extent of Trust assets held by or under the administration of the Trustee.

## ARTICLE V

## INDEPENDENT PROFESSIONAL TRUSTEE

**5.1    Appointment of Independent Professional Trustee.**    At all times while a Policy Loan is outstanding, there shall be a separate trustee, serving pursuant to this Section 5.1, or a successor thereto appointed in accordance with Section 5.2, to carry out the express duties and obligations of the Independent Professional Trustee set forth herein (such separate trustee appointed in accordance herewith, the "Independent Professional Trustee"). As of the date hereof, Bank of Utah is appointed to serve as Independent Professional Trustee hereunder until its resignation in accordance with Section 5.2. For the avoidance of any doubt all references to the "Trustee" herein shall not be deemed to include any Independent Professional Trustee, and the Independent Professional Trustee shall not have any of the duties or obligations of any Trustee hereunder. No bond or other security shall be required of any person or institution named in this Trust Agreement as Independent Professional Trustee.

**5.2    Resignation of Independent Professional Trustee; Successor Independent Professional Trustee.**    An Independent Professional Trustee may resign by giving written notice to the Settlor and the Trustee, and such resignation shall be effective upon its delivery of such written notice. Should a Independent Professional Trustee resign or otherwise cease to serve as Independent Professional Trustee hereunder, the Trustee shall appoint a successor Independent Professional Trustee and provide notice of such appointment to the resigning or removed Independent Professional Trustee. Any successor Independent Professional Trustee appointed after the date hereof in accordance with this Section 5.2 shall be a federal or state chartered bank or trust company. Notwithstanding the foregoing, the Settlor shall not serve as an Independent Professional Trustee hereunder. No successor Independent Professional Trustee shall be obligated to examine the accounts, records or acts of a predecessor Independent Professional Trustee. Such successor Independent Professional Trustee shall accept, without examination or review, the accounts rendered and the property delivered by or for a predecessor Independent Professional Trustee. No Independent Professional Trustee shall in any way or manner be responsible for any act or omission to act on the part of any predecessor Independent Professional Trustee.

**5.3    Compensation of Independent Professional Trustee.**    Notwithstanding anything to the contrary contained in this Trust Agreement, any corporate Independent Professional Trustee serving hereunder shall be entitled to compensation in accordance with its regular fee schedule applicable at the time it shall be acting as Independent Professional Trustee hereunder. Any Independent Professional Trustee shall also be entitled to reimbursement for expenses necessarily incurred in the performance of the Independent Professional Trustee's duties hereunder.

**5.4    Provisions Relating to Independent Professional Trustees.**    The following provisions shall govern the Independent Professional Trustee's rights, powers, obligations and duties under this Trust Agreement, notwithstanding anything herein to the contrary:

(a)    The Independent Professional Trustee is expressly relieved of all liability to the Settlor, the Beneficiary or any other person as a result of:

(1)    The corpus of the Trust being limited to one or more Policies;

(2)    The Trust's entering into and performing its obligations under the Policy Loan Documents as contemplated herein.

(b)    In the absence of bad faith on its part, the Independent Professional Trustee may conclusively rely upon certificates or opinions furnished to the Independent Professional Trustee

37

in determining the truth of the statements and the correctness of the opinions contained therein; provided, however, that the Independent Professional Trustee shall have examined such certificates or opinions so as to determine their compliance with the requirements of this Trust Agreement.

(c)    The Independent Professional Trustee shall not be personally liable or accountable to the Settlor, any Beneficiary of the Trust, the Lender, or any other Person, except for the Independent Professional Trustee's own grossly negligent action, grossly negligent failure to act, willful misconduct or bad faith. In particular, but not by way of limitation (and subject to the exceptions set forth in the preceding sentence):

(1)    The Independent Professional Trustee shall at no time have any responsibility or liability for or with respect to the legality, validity and enforceability of this Trust Agreement, any life insurance policy, or any of the Policy Loan Documents, and the Independent Professional Trustee shall be entitled to assume the validity and enforceability of all such documents without further inquiry;

(2)    The Independent Professional Trustee shall not be liable with respect to (x) any action taken or omitted to be taken by it in accordance with the instructions provided by the Trustee or the Lender in accordance with the provisions of this Trust Agreement, or (y) any action taken or omitted to be taken by the Trustee, any Beneficiary, the Lender or any other Person;

(3)    No provision of this Trust Agreement, any Policy Loan Document or other agreement shall require the Independent Professional Trustee to expend or risk funds or otherwise incur any financial liability in the performance of any of its rights or powers hereunder, if the Independent Professional Trustee shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(4)    The Independent Professional Trustee shall not be responsible for or in respect of and makes no representation as to the validity or sufficiency of any provision of this Trust Agreement or for the due execution hereof by the Settlor, any Beneficiary or other trustee or for the form, character, genuineness, sufficiency, value or validity of any of the Trust estate;

(5)    The Independent Professional Trustee shall be entitled to rely exclusively, without investigation or other action on its part, on directions, notices, advices and calculations received from the Trustee or the Lender in accordance with this Trust Agreement, and such reliance shall not constitute negligence or misconduct in connection with the Independent Professional Trustee's handling of funds or otherwise, and the Independent Professional Trustee shall not be personally liable or accountable to any Person, under any circumstances, by reason of such reliance;

(6)    The Independent Professional Trustee shall be under no obligation to institute, conduct or defend any litigation under this Trust Agreement or otherwise or in relation to this Trust Agreement or the Policy Loan Documents, unless some other Person acceptable to the Independent Professional Trustee shall have offered to the Independent Professional Trustee security or indemnity reasonably satisfactory to it against the costs, expenses and liabilities that may be incurred by the Independent Professional Trustee therein or thereby. The right of the Independent Professional Trustee to perform any discretionary act enumerated in this Trust Agreement shall not be construed as a duty, and the Independent Professional Trustee shall not be

personally liable or accountable for the performance of any such act except as specifically provided herein.

(7)     The Independent Professional Trustee shall not have any duty or obligation to manage, control, prepare, file or maintain any report, license or registration, use, sell, dispose of or otherwise deal with the Trust estate, or otherwise to take or refrain from taking any action under or in connection with this Trust Agreement or any Policy Loan Documents, except as expressly required hereby or thereby;

(8)     The Independent Professional Trustee shall be under no obligation to appear in, prosecute or defend any action, or to take any other action other than the giving of notices, which in its opinion may require it to incur any out-of-pocket expense or any liability unless it shall be furnished with such security and indemnity against such expense or liability as it may reasonably require;

(9)     The Independent Professional Trustee shall incur no liability if, by reason of any provision of any present or future law or regulation thereunder, or by any force majeure event, including but not limited to natural disaster, war or other circumstances beyond its reasonable control, the Independent Professional Trustee shall be prevented or forbidden from doing or performing any act or thing which the terms of this Trust Agreement provide shall or may be done or performed, or by reason of any exercise of, or failure to exercise, any discretion provided for in this Trust Agreement;

(10)     The Independent Professional Trustee shall not be required to take any action hereunder or in relation to the Policy Loan Documents, or otherwise if the Independent Professional Trustee shall have reasonably determined, or shall have been advised by counsel, that such action is likely to result in liability on the part of the Independent Professional Trustee or is contrary to the terms hereof or is otherwise contrary to law.

(d)     Whenever the Independent Professional Trustee is unable to decide between alternative courses of action permitted or required by the terms of this Trust Agreement, or is unsure as to the application, intent, interpretation or meaning of any provision of this Trust Agreement or any Policy Loan Document, the Independent Professional Trustee shall promptly give notice (in such form as shall be appropriate under the circumstances) to the Trustee requesting instruction as to the course of action to be adopted (with a copy to the Lender during such time while any Policy Loan is outstanding), and, to the extent the Independent Professional Trustee acts in good faith in accordance with any such instruction from the Trustee (with the Lender's written consent during such time as any Policy Loan is outstanding), the Independent Professional Trustee shall not be liable on account of such action to any Person.   If the Independent Professional Trustee shall not have received appropriate instructions within ten calendar days of sending such notice (or within such shorter period of time as reasonably may be specified in such notice or may be necessary under the circumstances) it may, but shall be under no duty to, take or refrain from taking such action which is consistent, in its view, with this Trust Agreement, and the Independent Professional Trustee shall have no liability to any Person for any such action or inaction.

(e)     The Independent Professional Trustee shall incur no liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper reasonably believed by it to be genuine and reasonably believed by it to be signed by the proper party or parties and need not investigate any fact or matter in any such document as long as the Independent Professional Trustee has otherwise

satisfied its obligations under this Trust Agreement. The Independent Professional Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect. As to any fact or matter the method of the determination of which is not specifically prescribed herein, the Independent Professional Trustee may for all purposes hereof rely on a certificate, signed by the president or any vice president or by the treasurer or other authorized officers of the relevant party, as to such fact or matter, and such certificate shall constitute full protection to the Independent Professional Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon.

(f)     In the administration of the trusts hereunder, in the exercise of its rights and powers and in the performance of its duties and obligations under this Trust Agreement, the Independent Professional Trustee: (i) may act directly or through its agents, attorneys, custodians or nominees pursuant to agreements entered into with any of them, and although the Independent Professional Trustee shall be responsible for all obligations of the Independent Professional Trustee hereunder, the Independent Professional Trustee shall not be liable for the conduct or misconduct of such agents, attorneys, custodians or nominees if such agents, attorneys, custodians or nominees shall have been selected by the Independent Professional Trustee in good faith, and (ii) may consult with counsel, accountants and other skilled professionals to be selected in good faith and employed by it. The Independent Professional Trustee shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the opinion or advice of any such counsel, accountants or other such Persons as long as no officer or agent of the Independent Professional Trustee has any actual knowledge that such opinion or advice is inappropriate or based on incorrect information.

(g)     Without prejudice to any separate fee and indemnification agreement, the Trust shall indemnify, protect, save and hold the Independent Professional Trustee, its officers, directors, shareholders and employees (collectively, the "Indemnified Persons") harmless against any and all loss, liability, obligation, damage, claim, penalty, tax (excluding any taxes on the Independent Professional Trustee on, or measured by, any compensation received by the Independent Professional Trustee) or expense of any kind or nature whatsoever arising out of or in connection with the creation, acceptance, operation or administration of the Trust, including the costs and expenses of defending any Indemnified Person against any claim or liability in connection with the exercise or performance of any rights, powers or duties hereunder (each of the foregoing, a "Claim"); provided, however, the Trust shall not be required to indemnify, protect, save and hold any Indemnified Person harmless from any Claim (or portion thereof) resulting from gross negligence, willful misconduct or bad faith on such Indemnified Person's part. Upon the Independent Professional Trustee's becoming aware of the occurrence of an event that results in any loss, liability or expense to any Indemnified Person, the Independent Professional Trustee shall promptly send written notice thereof to the Trustee and the Settlor. The indemnity contained in this section shall survive the termination of this Trust Agreement.

(h)     It is hereby acknowledged that the Person serving as Independent Professional Trustee of the Trust, or an affiliate of such Person, may also serve in any one or more of the following capacities:

Escrow Agent or Securities Intermediary

The Settlor and Beneficiary hereby acknowledge the potential conflict of interests between the Independent Professional Trustee's actions as Independent Professional Trustee and the Independent Professional Trustee's actions in such other capacities, consent to the Independent

Professional Trustee's serving in any or all such capacities, and, to the fullest extent permitted by law, waive any potential conflict of interests the Independent Professional Trustee may have as a result of serving in such capacities. When taking any action in any of the above capacities, the Independent Professional Trustee shall be deemed to be acting only in such capacity, and shall not be deemed to be acting in its capacity as Independent Professional Trustee hereunder. Any limitation placed upon the Independent Professional Trustee in any of the above capacities shall not be a limitation upon the Independent Professional Trustee's ability to take any such act in any other capacity, unless such activities in such other capacity are also so limited.

(i)    In the event the signature of the Independent Professional Trustee is required in connection with documentation relating to any sale or disposition of any Policy, it is expressly understood and agreed that the Independent Professional Trustee shall have no responsibility to make any representations or warranties regarding (i) any Policy, or (ii) any documents relating to the issuance of any Policy.

(j)    If (a) there is any disagreement or dispute in connection with the Trust or the subject matter hereof, including any dispute between the Trustee, the Independent Professional Trustee, the Settlor, or any Beneficiary, or between the Settlor, the Trustee, any Beneficiary or any Person not a party to this Trust Agreement or (b) there are adverse or inconsistent claims or demands upon, or inconsistent instructions to the Independent Professional Trustee, the Independent Professional Trustee may at its election refuse to comply with any such claims, demands or instructions, or refuse to take any other action pursuant to this Trust Agreement until (i) the rights of all Persons involved in the dispute have been fully and finally adjudicated by a court of competent jurisdiction or the Independent Professional Trustee has resolved any such doubts to its good faith satisfaction; or (ii) all disputes have been resolved between the Persons involved and the Independent Professional Trustee has received written notice thereof satisfactory to it from all such Persons. Without limiting the generality of the foregoing, the Independent Professional Trustee may at its election interplead the subject matter of this Trust Agreement with a court of competent jurisdiction, or commence judicial proceedings for a declaratory judgment, and, without prejudice to any separate fee and indemnification agreement, the Independent Professional Trustee shall be entitled to recover from the Settlor or the Trust the Independent Professional Trustee's attorneys' fees, expenses and costs in connection with any such interpleader or declaratory judgment action.

(k)    In the event the Independent Professional Trustee receives proceeds of any Policy in connection with a purported rescission of such policy by the insurer that issued such Policy, the Independent Professional Trustee shall give written notice to each of the Settlor and the Trustee (and during such time as any Policy Loan is outstanding, the Lender) (in such form as shall be appropriate under the circumstances) and the Independent Professional Trustee shall deliver all such proceeds to the Trustee or, during such time as any Policy Loan is outstanding, to the Lender in accordance with the Lender's written instructions.

(l)    Without limiting the generality of any other provision of this Trust Agreement, it is expressly understood and agreed by the parties hereto (i) that in no event shall the Independent Professional Trustee, in its individual capacity have any liability for any representations or warranties in any insurance application or any document submitted to an insurer in connection with any insurance policy, and (ii) the Independent Professional Trustee, in its individual and representative capacities shall have no duty or obligation, and the parties hereto have no expectation that it shall, and it shall not undertake, to inquire into or independently verify the accuracy or completeness in any manner of the representations or warranties made in any

41

insurance application or any document submitted to an insurer in connection with any insurance policy.

(m)     The Settlor hereby agrees and, as evidenced by its acceptance of any benefits hereunder, any Beneficiary agrees that Independent Professional Trustee in any capacity has not provided and will not provide in the future, any advice, counsel or opinion regarding the tax, financial, investment or insurance implications and consequences of the formation, funding and ongoing administration of the Trust, including, but not limited to, income, gift, and estate tax issues, insurable interest issues, and any financing arrangements.

(n)     Independent Professional Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Amendment, and no implied duties, covenants or obligations shall be read into this Amendment against Independent Professional Trustee. Except for those duties expressly assigned to the Independent Professional Trustee under this Amendment, the Trustee shall continue to perform all other Trustee duties as outlined in the Trust Agreement dated as of August 29, 2008 between Trustor and Trustee.   The parties hereto agree that Independent Professional Trustee will only take action as expressly provided herein or pursuant to written instructions received from a Lender under a Policy Loan.

(o)     Independent Professional Trustee, in its individual capacity, shall not have any obligation by virtue of this Amendment to expend or risk any of its own funds, or to take any action which could, in the reasonable opinion of Independent Professional Trustee, result in any cost or expense being incurred by Independent Professional Trustee, in its individual capacity. Independent Professional Trustee shall not be required to take any action or refrain from taking any action under this Amendment unless it shall have been indemnified by a Lender or the Trust in a manner and form satisfactory to Independent Professional Trustee against any liability, cost or expense (including reasonable attorneys' fees) which may be incurred in connection therewith. No provisions of this Agreement shall be deemed to impose any duty on Independent Professional Trustee to take any action if Independent Professional Trustee shall have been advised by counsel that such action would expose it to personal liability, is contrary to the terms hereof or is contrary to law.

## ARTICLE VI

## CERTAIN INDEPENDENT PROFESSIONAL TRUSTEE AND TRUSTEE PROVISIONS

6.1     At all times when a Policy Loan is outstanding under any Policy Loan Documents, whenever this Trust Agreement or the other Policy Loan Documents provide that an action may be taken or not taken at the option, election or in the discretion of the Independent Professional Trustee (the "Elective Action") (including, without limitation, the decision (i) to apply for and purchase a life insurance policy or to surrender, sell or otherwise dispose of said policy; and (ii) to enter into any amendment to any Policy Loan Documents), the Independent Professional Trustee shall only exercise such option, make such election, or exercise such discretion pursuant to written notice (the "Elective Notice") received from the Lender under any Policy Loan Documents or its designee (notice of the appointment of any such designee shall be provided in writing by the Lender to the Independent Professional Trustee) for so long as any obligations remain outstanding under any Policy Loan Documents (a) stating that certain Elective Action may be taken by a specified date (the "Elective Date"), (b) listing the alternative courses of action that may be taken, and (c) directing a course of action. The Independent Professional Trustee shall follow Lender's instructions contained in the Elective Action pursuant to clause (c) above, it being hereby agreed that except in the event of its own gross negligence, willful misconduct or bad faith in carrying out any Elective Action as so instructed, the Independent

Professional Trustee shall not have any liability to any Person or entity (including without limitation the Lender and any Beneficiary hereunder) for following the instructions contained in the Elective Action pursuant to clause (c) above. Any action by the Independent Professional Trustee shall be binding on the Trust and neither the signature of the Lender nor the Trustee shall be required to bind the Trust. The Independent Professional Trustee shall have no liability to any party for any decision of the Independent Professional Trustee absent gross negligence, willful misconduct or bad faith, and the Trust shall indemnify the Independent Professional Trustee and hold the Independent Professional Trustee harmless from any loss or expense incurred by the Independent Professional Trustee for any decision made in good faith and not tainted with gross negligence, willful misconduct or bad faith.

6.2    In the event the Independent Professional Trustee receives any correspondence from an insurance company that issued any Policy, it shall forward a copy of such correspondence within five (5) Business Days to the Lender and the Trustee.

6.3    Any cash, including, but not limited to any proceeds of any Policy, held from time to time by the Independent Professional Trustee shall remain uninvested.

6.4    At such time when all obligations under all Policy Loans have been paid and satisfied in full, as evidenced by a writing from the Lender to the Independent Professional Trustee, the Independent Professional Trustee shall transfer any Policy and/or any Policy proceeds in its possession to the Trustee within a commercially reasonable time, and the Independent Professional Trustee shall have no further obligation with respect to the Trust.

6.5    Notwithstanding any provision contained in this Trust Agreement to the contrary:

(a)    In the event that a Policy Loan is outstanding, is scheduled to mature within 60 days (based upon the maturity date specified in the related Loan Application and Agreement and the related Promissory Note executed by the Trust) and there are insufficient funds in the possession of the Independent Professional Trustee to fully satisfy the obligations under the related Policy Loan, Independent Professional Trustee shall deliver written notice to the Settlor and the Beneficiary of the Trust at the addresses provided in the Policy Loan Documents (provided, however, that if beneficiaries are listed by class, Independent Professional Trustee shall only be required to deliver such notice to the members of such class of beneficiaries identified in a written statement received by Independent Professional Trustee from the Settlor) stating (a) that such Policy Loan is maturing and the amount due (or projected to be due) on the maturity date thereof, as specified to Independent Professional Trustee in a written notice delivered to Independent Professional Trustee by the Lender, (b) the amount of funds in the Trust are insufficient, or otherwise unavailable, to fully satisfy the obligations under such Policy Loan and (c) that unless the Settlor and/or Beneficiary contribute funds to the Trust, through the Independent Professional Trustee, on or before three (3) Business Days prior to the maturity date sufficient to permit the Trust to pay such Policy Loan in full, that the Independent Professional Trustee is hereby directed to and shall have no discretion not to unconditionally and irrevocably transfer and assign the Policy to the Lender under such Policy Loan (the "Lender"[1]) or to a designee of the Lender if such designee is specified by the Lender in a written notice delivered prior to such transfer and assignment to Independent Professional Trustee (the "Designee"). If on or before three (3) Business Days prior to the maturity date of any Policy Loan the Settlor and/or Beneficiary contribute any funds to the Trust, through the Independent Professional Trustee, the Independent Professional Trustee shall, within three (3) Business Days after the receipt of any

---

[1] For avoidance of doubt, the term Lender shall include any person that acquires a Policy Loan, either via purchase and assignment or via a participation interest in the loan.

43

funds identified as being contributed by the Settlor and/or a Beneficiary, pay such funds to the Lender. In the event that the Settlor and/or Beneficiary fail to contribute funds to the Trust, through the Independent Professional Trustee, on or prior to such three (3) Business Day period in an amount sufficient to permit the Trust to pay all obligations scheduled to be due with respect to such Policy Loan on such maturity date (as specified to Independent Professional Trustee in a written notice delivered to the Trustee and the Independent Professional Trustee by the Lender or the Designee), each of the Trustee and Independent Professional Trustee is hereby directed to and shall have no discretion not to as soon as is commercially reasonably practicable thereafter unconditionally and irrevocably transfer and assign the related Policy and any cash or other assets of the Trust in the respective possession or control of each to the Lender or the Designee.

(b)     Following the maturity of a Policy Loan (whether at stated maturity, by acceleration following an event of default or otherwise), if (a) the Settlor and/or Beneficiary have not contributed funds to the Trust, through the Independent Professional Trustee, on or before three (3) Business Days prior to the maturity date in an amount sufficient to permit the Independent Professional Trustee to pay the amount due on such Policy Loan in full at the maturity date, as specified to Independent Professional Trustee in a written notice delivered to the Independent Professional Trustee by the Lender, and (b) the Trust does not otherwise have sufficient funds to satisfy such Policy Loan in full, immediately following receipt by the Independent Professional Trustee and Trustee of a notice of default from the Lender and a written demand for the assignment or transfer of the Policy to the Lender or the Designee, each of Trustee and the Independent Professional Trustee is hereby directed to and shall have no discretion not to as soon as is commercially reasonably practicable thereafter unconditionally and irrevocably transfer and assign the related Policy and any cash or other assets of the Trust, in the possession or control of each, as applicable, to the Lender or the Designee.

(c)     Any such transfer and assignment of the Policy shall be effected by the Independent Professional Trustee executing and delivering on behalf of the Trust to the Lender or the Designee as aforesaid (i) a change of owner form changing the owner of the Policy to the Lender or the Designee, (ii) a change in beneficiary form changing the beneficiary of the Policy to the Lender or the Designee and (iii) such other documents or instruments as shall be reasonably requested by the Lender for the purpose of effecting such changes in owner and beneficiary and the transfer and assignment of all right, title and interest in and to the Policy, each of such forms, documents or instruments to be in the form provided by Lender to the Independent Professional Trustee. Any funds in the possession of the Independent Professional Trustee to be transferred shall be transferred by wire transfer of immediately available funds to the account specified in writing by the Lender to the Independent Professional Trustee.

(d)     At any time following the receipt of a written notice from the Lender stating that an event of default has occurred under any Policy Loan and requesting a delivery to the Lender or the Designee of the original related Policy and all amendments and endorsements thereto and any other documents related to such Policy, the Independent Professional Trustee is hereby directed to and shall have no discretion not to unconditionally and irrevocably deliver such original Policy and such other documents in its possession to the Lender or the Designee. If requested in writing at any time by the Lender after the execution and delivery of the change in owner and change in beneficiary forms referred to in paragraph (c) of this Section 6.5, the Independent Professional Trustee shall execute all documents presented to it for execution by Lender to cause the relevant insurance carrier to issue a verification of coverage form indicating that ownership of such Policy and the beneficiary under such Policy have been changed to the Lender or the Designee.

44

(e)     After the transfer of the Policy and Trust assets as provided in Paragraphs (a), (b), (c) and (d) of this Section 6.5, the Independent Professional Trustee shall thereafter arrange for any filings to be made or actions to be taken by the Independent Professional Trustee or the Trust, as directed by the Trustee or Lender, prior to the termination of the Trust, including without limitation, the making of any tax or other filings required by law as determined by Trustee or Lender.  Upon the completion of such filing and the taking of such actions, the Trust shall, subject to obtaining the consent of the Lender and any Designee, terminate and the Independent Professional Trustee thereafter shall have no further duties, obligations or liabilities whatsoever to the Settlor or Beneficiary hereunder or in connection with or relating to such transfer and assignment.  The Independent Professional Trustee shall engage, at the direction of the Trustee and at the expense of the Trust, a firm of independent public accountants (the "Accountants") to prepare any and all tax returns of the Trust that may be required.  The Independent Professional Trustee shall have no liability with respect to the negligence or misconduct of the Accountants and shall only be obligated to (a) execute tax returns presented to it by the Accountants and file the same with the appropriate tax authorities and (b) pay the tax shown to be due on such tax returns, to the extent of available funds in the Trust.  The Settlor agrees to contribute sufficient funds to the Trust to provide for the payment of the Accountants' tax return preparation fees and to pay any tax shown to be due on such tax returns, to the extent that the Trust has insufficient funds therefor.  In the event that the Settlor fails to contribute sufficient funds to the Trust to allow the Accountants to prepare tax returns, the Independent Professional Trustee shall have no duty or obligation to prepare such tax returns or incur any expenses whatsoever with respect to their preparation.  The Trustee hereby agrees to provide any and all information in its possession that may be necessary for the Accountants to prepare any tax returns.

(f)     The Settlor acknowledges that in the event that the Independent Professional Trustee is required to transfer and assign all of the Trust's assets to the Lender under the circumstances described above in Paragraphs (a), (b), (c) and (d) of this Section 6.5, the Beneficiary shall receive no benefits under the Trust or any Policy owned by the Trust.  Settlor and Beneficiaries further acknowledge that the Independent Professional Trustee shall not be liable for any transfer or assignment by the Independent Professional Trustee as described in Paragraphs (a), (b), (c) and (d) of this Section 6.5.

6.6     (a)     The Independent Professional Trustee, on behalf of the Trust, is hereby directed to, and shall cause the Trust to enter into the following Policy Loan documents presented to it for execution:

1. Loan Application and Agreement.
2. Risk and Disclosure Statement.
3. Promissory Note.
4. A Collateral Assignment of the Life Insurance Policy.
5. Such other documents or instruments as the Lender may reasonably request in writing and as presented to it for execution (the documents referred to in 1-4, and such documents referred to in this 5, being collectively the "Policy Loan Documents").

(b)     Subject to Article V of this Trust Agreement, the Independent Professional Trustee shall, at the written direction of the Lender, cause the Trust to take such actions as the Lender shall specify in connection with the matters set forth in Article 5(a) of the Loan Application and Agreement and shall pursuant to such written directions cause the Trust to

comply with the remaining covenants set forth in Article 5 of the Loan Application and Agreement.

(c)    Subject to Article V of this Trust Agreement, for so long as any Policy Loan remains outstanding, the Independent Professional Trustee shall cause the Trust to:

(1)    upon written direction from the Lender, take such further action and/or execute and deliver all further assurances, documents and/or instruments as may be reasonably requested in writing by the Lender and presented to it for execution in order to (x) effect, administer or enforce the transactions contemplated by Policy Loan Documents, and (y) permit the realization of the benefits of any collateral assignment or pledge of the Policy to the Lender and its assigns.

(2)    within one (1) Business Day of its discovery thereof, notify the Lender in writing of any breaches of the representations and warranties of the Trust under any Policy Loan Document.

6.7    Notwithstanding anything to the contrary contained in this Trust Agreement, the following provisions shall apply to the extent any Policy Loan is outstanding and with respect to any Policy over which the Independent Professional Trustee has exclusive control as set forth in Article V:

(a)    During the lifetime of the Settlor, the Independent Professional Trustee may receive, as owner and/or Beneficiary, the Policy and may apply for, purchase or enter into any agreement for the purchase of any Policy.

(b)    The Independent Professional Trustee, on behalf of the Trust, is vested with all right, title and interest in and to the Policies which may compose part of the Trust estate and is authorized and empowered to exercise as absolute owner all of the rights, powers, interests, privileges, and benefits of every kind which may accrue on account of any Policy or interest therein.

(c)    The Settlor shall have no incidents of ownership, interest or rights of any kind in or to any of the said Policies which may be included within the Trust estate, or any other property of the Trust. The Settlor hereby relinquishes all rights and powers in any Policy included within the Trust estate which are not assignable, and will, at the request of the Independent Professional Trustee, execute all other instruments reasonably required to effectuate this relinquishment.

(d)    The Settlor hereby authorizes and directs any insurance company issuing any Policy now or hereafter included within the Trust estate to recognize the Independent Professional Trustee as the absolute owner of such Policy, fully entitled to all options, rights, privileges and interests under such Policy.

(e)    In the event that the Independent Professional Trustee receives written notice that a Policy is being contested or rescinded by a life insurance carrier, the Independent Professional Trustee shall, within three (3) Business Days of its receipt thereof, forward such communications and all documents relating to such contest or rescission action to the Settlor and Lender. The Independent Professional Trustee shall at the written direction of the Lender and at the joint and several expense of the Trust and Lender cause the Trust to defend any actions by a life insurance carrier to rescind or contest any Policy.

(f)     Without limiting the generality of any other provision of this Trust Agreement, it is expressly understood and agreed by the parties hereto (i) that in no event shall Independent Professional Trustee, in its individual capacity have any liability for any representations or warranties in any Policy application or any document submitted to an insurance company in connection with any Policy, and (ii) Independent Professional Trustee, in its individual and representative capacities shall have no duty or obligation, and the parties hereto have no expectation that it shall, and it shall not undertake, to inquire into or independently verify the accuracy or completeness in any manner of the representations or warranties made in any Policy application or any document submitted to an insurance company in connection with any Policy.

## ARTICLE VII

## SPENDTHRIFT

7.1     Notwithstanding anything herein to the contrary:

(a)     Except as may be required in conjunction with any Policy Loan or as otherwise provided herein, the interest of any Beneficiary in any trust created hereunder shall not be transferred, assigned or conveyed and shall not be subject to the claims of any creditors of such Beneficiary and any attempted transfer, assignment or conveyance shall be void and of no effect, and each Trustee and Independent Professional Trustee, to the extent of any trust property held by each respectively, shall continue distributing such trust property directly to or for the benefit of such Beneficiary as provided for hereunder notwithstanding any transfer, assignment or conveyance, and notwithstanding any action by creditors.

(b)     Notwithstanding the foregoing, the interest of any Beneficiary in any trust created hereunder may be pledged to the Lender pursuant to the Policy Loan.  In addition, notwithstanding the foregoing, immediately upon the receipt by the Independent Professional Trustee of a notice of default from the Lender stating that the interest of a Beneficiary in the Trust has been pledged to the Lender pursuant to the Policy Loan and that an event of default has occurred under the Policy Loan, and that pursuant to an assignment of beneficial interest previously delivered pursuant to a security agreement, the interest of the beneficiary in the Trust has been unconditionally and irrevocably assigned and transferred to the Lender or the Designee, the Independent Professional Trustee shall immediately thereafter reflect on the books and records of the Trust the assignment and transfer of such beneficial interest to, and the ownership of such beneficial interest by, the Lender or the Designee, and shall give written notice of such transfer to the Trustee following which the Trustee shall reflect such transfer on any books and records it maintains for the Trust, it being understood and agreed that any failure of the Trustee to reflect such transfer shall have no effect on the validity thereof.

(c)     From and after the recordation of such transfer by the Independent Professional Trustee of the beneficial interests in the Trust to the Lender or the Designee, each of the Trustee and Independent Professional Trustee is directed unconditionally and irrevocably not to take any action with regard to the Trust or the Policy without the prior written consent of the Lender or any such Designee, as applicable.

(d)     In the event the interest of any Beneficiary in the Trust created hereunder is transferred, assigned and re-titled in the name of the Lender or the Designee, as applicable, as required Section 7.1(b), the Lender or Designee shall have the power and right to direct that all of the principal thereof, together with accumulated income (including any Policy), shall be immediately thereafter unconditionally and irrevocably paid and distributed to, or re-titled in the

name of, the Lender or the Designee by the Independent Professional Trustee, after which the Trust shall be terminated.

## ARTICLE VIII

## RULE AGAINST PERPETUITIES

Notwithstanding any other provision of this instrument, every trust created by this instrument shall terminate no later than twenty-one (21) years after the death of the last survivor of those issue of any noncharitable beneficiaries named or identified in this instrument who are alive at the creation of the trust. For purposes of this perpetuities savings clause, a trust shall be deemed to have been created on the date the trust becomes irrevocable or the date of the death of the settlor, whichever occurs first. If a trust is terminated under this section, the trustee shall distribute all of the principal and undistributed income of the trust to the income beneficiaries of the trust in the proportion in which they are entitled (or eligible, in the case of discretionary payments) to receive income immediately before the termination. If that proportion is not fixed by the terms of the trust, the trustee shall distribute all of the trust property to the persons then entitled or eligible to receive income from the trust outright in a manner that, in the trustee's opinion, will give effect to the intent of the settlor in creating the trust. The trustee's decision is to be final and incontestable by anyone.  To the extent any trust hereunder terminates pursuant to this Article VIII, the Trustee shall send written notice thereof to the Independent Professional Trustee.  The Independent Professional Trustee shall only be deemed to have knowledge of any such termination to the extent so advised.

## ARTICLE IX

## BENEFICIARY WITHDRAW RIGHTS

Right to Withdraw Gifts. So long as the settlor is living, the settlor's wife and children, referred to as the "withdrawal beneficiaries," shall have the right to withdraw any gift made to the trust in accordance with the following provisions:

(a)     Notice of Gifts. The trustee shall promptly give written notice to each of the withdrawal beneficiaries of each gift made to the trust.

(b)     Power to Withdraw Gifts. Each of the withdrawal beneficiaries who are then living may withdraw a fraction of the gift equal to one divided by the number of the withdrawal beneficiaries who are then living, or any portion of that fraction; provided, however, that the aggregate amount of gifts to the trust from any one donor that each withdrawal beneficiary may withdraw during any calendar year shall not exceed the amount that may from time to time be specified for gift tax exclusion in Internal Revenue Code Section 2503(b), as amended, for gifts from one donor to one donee (the "annual exclusion amount") per person; and provided further that the aggregate amount of gifts to the trust from all donors that each withdrawal beneficiary may withdraw during any calendar year shall not exceed the amount that may from time to time be specified in Internal Revenue Code Section 2041(b)(2), as amended, as the maximum amount of property with respect to which the lapse of a general power of appointment will not be deemed taxable lapse amount").

(c)     Exercise of Withdrawal Power. The power of any a release of a general power of appointment ("the non- person to withdraw the non-taxable lapse amount as specified in this section must be exercised, if at all, by electing to do so in an instrument in writing delivered to the trustee within sixty (60) days after the later of (1) the date on which the gift is made, or (2) the

date on which the person is given notice of the gift. The trustee may satisfy the exercise of any withdrawal right by distributing to the person cash or other property, including all or an undivided interest in a life insurance policy.

(d)   Lapse of Power. Except as otherwise provided in a writing signed by the donor and delivered to the trustee at the time of making a gift to the trust, the right of any person to withdraw the gift as specified in this section shall be subject to lapse on the following terms and conditions: The right to withdraw any amount up to and including the amount that may from time to time be specified in Internal Revenue Code Section 2041(b)(2), as amended, as the maximum amount of property with respect to which the lapse of a general power of appointment will not be deemed a release of a general power of appointment ("the non-taxable lapse amount"), shall lapse on the last day on which the right could have been exercised, and may not be exercised thereafter. However, if that person has a right to withdraw any amount in excess of the non-taxable lapse amount, the right of that person to withdraw the excess over the non-taxable lapse amount shall not lapse in the calendar year in which the amount could initially have been withdrawn, but instead shall continue in force into the subsequent calendar year or years. The right of that person to withdraw the excess as redetermined each calendar year may be exercised only between January 1 and January 31 of that year, and if the right is not exercised within that time, it shall lapse each calendar year to the extent that it does not exceed the non-taxable lapse amount; any amounts in excess of the non-taxable lapse amount shall not lapse and shall be carried over to subsequent calendar years.

(e)   Incapacity. If any person who has a right to withdraw a gift as specified in this section is a minor or is otherwise subject to any legal incapacity, the trustee shall give the written notice required to be given as specified in this section to the guardian or conservator of that person, and the guardian or conservator may make the withdrawal on behalf of that person. Any property delivered to a guardian or conservator shall be held by the guardian or conservator for the benefit and use of that person.

It is understood and agreed that to the extent the provisions of this Article IX are applicable, the Trustee shall give notice thereof to the Independent Professional Trustee, and the sole duty of the Independent Professional Trustee with respect thereto will be to transfer to the Trustee any cash or other property transferred to the Trust through the Independent Professional Trustee by any Person other than the Lender and the insurance company that issued the relevant Policy in such amounts and at such times as the Trustee shall specify in writing; provided, however, that the duty of the Independent Professional Trustee to transfer amounts to the Trustee as provided herein shall not apply to the extent of any funds contributed to the Trust through the Independent Professional Trustee which have been identified as being contributed to (i) satisfy all or any part of any Policy Loan or, (ii) fund administrative expenses of the Trust (including, without limitation, the fees of the Accountants).

## ARTICLE X

## TERMINATION

**10.1   Termination of the Trust.**

(a)   The dissolution of the Trust (including each trust hereunder) shall begin upon the earliest of the following events:

(1)   the entry of a decree of judicial dissolution of the Trust;

(2)     the written direction of the Lender or Designee delivered to the Trustee and Independent Professional Trustee in accordance with Sections 6.5(e) or 7.1(d);

(3)     so long as no Policy Loan remains outstanding, upon the written election of the Trustee; or

(4)     so long as no Policy Loan remains outstanding, upon the happening of an event specified in Article VIII.

(b)     As soon as practicable after the occurrence of an event referred to in Section 10.1(a), the Independent Professional Trustee shall (in accordance with the written direction of the Trustee, or so long as any Policy Loan remains outstanding, the Lender) transfer the Trust assets in its possession or control to the Lender or Trustee, as the case may be, and the Trustee shall wind up and dissolve the Trust, by distributing all of the Trust's assets, first as necessary to satisfy any Policy Loan to the Lender (in accordance with the Lender's written direction), and to the extent of any remaining Trust assets, to the Beneficiary. Immediately thereafter, the Trust shall terminate and be of no further force or effect, except for any provisions that expressly survive the termination hereof.

## ARTICLE XI

## MISCELLANEOUS

**11.1     Interpretation.**  Wherever used herein and to the extent appropriate, the masculine, feminine or neuter gender shall include the other two genders, the singular shall include the plural, and the plural shall include the singular.  However, for purposes of this Trust Agreement, the Settlor shall under no circumstances be considered as custodian of any beneficiary, and shall have no powers as such.

**11.2     Situs; Governing Law.**  This Trust Agreement and the trust(s) created herein shall be construed, regulated and governed by and in accordance with the laws of the state of the Independent Professional Trustee, as such state shall be designated in any appointment. The situs of the Trust and its place of administration shall be the state of the Independent Professional Trustee, as such state shall be designated in any appointment.  The current situs of this Trust Agreement is the State of Utah.

**11.3     Headings.**  Headings contained in this Trust Agreement are inserted for convenience of reference and do not affect the interpretation of this Trust Agreement or any provision hereof.

**11.4     Severability.**  If any provision of this Trust Agreement, or the application of such provision to any Person or circumstance, shall be held invalid, the remainder of this Trust Agreement, or the application of such provision to persons or circumstances other than those to which it is held invalid, shall not be affected thereby.

**11.5     Delivery of Notice to Settlor.**     After the Settlor's death, any notice to be delivered to the Settlor shall be delivered to the Settlor's legal representative.

**11.6     Counterparts; Delivery by Facsimile.**   This Trust Agreement may contain more than one counterpart of the signature page and this Trust Agreement may be executed by the affixing of the signature of each of the parties hereto to one of such counterpart signature pages.  All such counterpart signature pages shall be read as though one and they shall have the same force and effect as though all of the signers had signed a single signature page.

**11.7   Notices.**   All demands, notices and other communications hereunder shall be in writing and shall be deemed to have been duly given when personally delivered or one Business Day after being sent by overnight delivery service or three days after being deposited in the mail, certified mail postage prepaid, or when sent by facsimile transmission, if confirmed by mechanical confirmation and if a copy thereof is promptly thereafter personally delivered, sent by overnight delivery service or so deposited in the mail, addressed to:

(a)   Settlor:          Hal Katersky
                        508 W Stafford Rd
                        Thousand Oaks, CA 91361

(b)   Beneficiary(ies):  Hilary Katersky
                        508 W. Stafford Rd
                        Thousand Oaks, CA 91361

(c)   Trustee:          Barry Lavine
                        20979 Hatteras St
                        Woodland Hills, CA 91367

(d)   Independent Professional Trustee:

        Bank of Utah
        Corporate Trust Services
        200 E. South Temple, Suite 210
        Salt Lake City, UT 84111
        Phone: (801) 924-3690
        Fax: (801) 746-3519

(e)   Lender:          Imperial Finance + Trading
                        701 Park of Commerce Blvd #301
                        Boca Raton, Fl 33487

## ARTICLE XII

## DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings:

"**Accountants**" shall have the meaning set forth in Section 6.5(e).

"**Beneficiary**" shall have the meaning set forth in the introductory paragraph hereto.

"**Business Day**" means any day of the year, other than a Saturday or Sunday or legal holiday, on which banks are authorized or required to close in state of the location of the Independent Professional Trustee.

"**Claims**" shall have the meaning set forth in Section 5.4(g).

51

"**Independent Professional Trustee**" shall have the meaning set forth in Section 5.1.

"**Designee**" shall have the meaning set forth in Section 6.5(a).

"**Elective Action**" shall have the meaning set forth in Section 6.1.

"**Elective Date**" shall have the meaning set forth in Section 6.1.

"**Elective Notice**" shall have the meaning set forth in Section 6.1.

"**Settlor**" shall have the meaning set forth in the introductory paragraph hereto.

"**Indemnified Persons**" shall have the meaning set forth in Section 5.4(g).

"**Lender**" shall have the meaning set forth in Section 6.5(a).

"**Loan Application and Agreement**" means that certain Loan Application and Agreement to be entered into by the Trust with a Lender for purposes of acquiring the Policy Loan.

"**Original Trust Agreement**" shall have the meaning set forth in the introductory paragraph hereto.

"**Person**" means a legal person, including any individual, corporation, estate, partnership, limited partnership, joint venture, association, joint stock company, limited liability company, trust (including a business or statutory trust), unincorporated association, or government or any agency or political subdivision thereof, or any other entity of whatever nature.

"**Policy**" has the meaning set forth in Section Article III.

"**Policy Loan**" means the borrowing effected by the Trust under the Policy Loan Documents.

"**Policy Loan Documents**" shall have the meaning set forth in Section 6.6.

"**Trust**" shall have the meaning set forth in the recitals hereto.

"**Trust Agreement**" shall have the meaning set forth in the introductory paragraph hereto.

"**Trustee**" shall have the meaning set forth in the introductory paragraph hereto.

[Signature pages follow.]

IN WITNESS WHEREOF, the undersigned has executed this Amended and Restated Trust Agreement on the day and year first above written.

_____          _____ (SEAL)
Witness                                                       Hal Katersky, SETTLOR

_____
Witness (this witness may not be the
undersigned notary)

STATE OF _California_____

COUNTY OF _Los Angeles_____

This day personally appeared before me, the undersigned authority in and for said County and State, the within named **Hal Katersky** (Settlor) who acknowledged signing and delivering the above and foregoing Amended and Restated HAL KATERSKY IRREVOCABLE LIFE INSURANCE TRUST on the day and date therein mentioned as a free and voluntary act and deed and for the purposes therein expressed.

GIVEN under my hand and official seal of office this the 3½ day of October, 2008.

_____
Notary Public

My Commission Expires: Jan 21st, 2010

ALIREZA MAZAHRI
Commission # 1639914
Notary Public - California
Los Angeles County
My Comm. Expires Jan 21, 2010

53

IN WITNESS WHEREOF, the undersigned has executed this Amended and Restated Trust Agreement on the day and year first above written.

X _____
Witness

_____ (SEAL)
Barry Lavine, TRUSTEE

_____
Witness (this witness may not be the undersigned notary)

STATE OF _California_

COUNTY OF _Los Angeles_

This day personally appeared before me, the undersigned authority in and for said County and State, the within named **Barry Lavine** (Trustee) who acknowledged signing and delivering the above and foregoing Amended and Restated HAL KATERSKY IRREVOCABLE LIFE INSURANCE TRUST on the day and date therein mentioned as a free and voluntary act and deed and for the purposes therein expressed.

GIVEN under my hand and official seal of office this the _9th_ day of _October_, 2008.

_____
Notary Public

My Commission Expires: _Jan 21st, 2010_

ALIREZA MAZAHRI
Commission # 1639914
Notary Public - California
Los Angeles County
My Comm. Expires Jan 21, 2010

ALIREZA MAZAHRI
Commission # 1639914
Notary Public - California
Los Angeles County
My Comm. Expires Jan 21, 2010

54

IN WITNESS WHEREOF, the undersigned has executed this Amended and Restated Trust Agreement on the day and year first above written.

_Jenna Moe_
Witness

_Jenna Prop_
Witness (this witness may not be the undersigned notary)

_Hilla A. Catusi_ (SEAL)
Hillary A. Katersky, BENEFICIARY

_Hilary a Katersky_

STATE OF _CALIFORNIA_

COUNTY OF _VENTURA_

    This day personally appeared before me, the undersigned authority in and for said County and State, the within named **Hillary A. Katersky** (Beneficiary) who acknowledged signing and delivering the above and foregoing Amended and Restated HAL KATERSKY IRREVOCABLE LIFE INSURANCE TRUST on the day and date therein mentioned as a free and voluntary act and deed and for the purposes therein expressed.

    GIVEN under my hand and official seal of office this the _27_ day of _OCTOBER_, 2008.

NALYN A. WIRATUNGA
Commission # 1806275
Notary Public - California
Ventura County
My Comm. Expires Jul 12, 2012

_Nalyn A Wiratunga_
Notary Public

My Commission Expires: _07-12-2012_

IN WITNESS WHEREOF, the undersigned has executed this Amended and Restated Trust Agreement on the day and year first above written.

_____
Witness

_____
Witness (this witness may not be the undersigned notary)

_____ (SEAL)
**Andrew Katersky**, BENEFICIARY

_on Separate page_

STATE OF _____

COUNTY OF _____

    This day personally appeared before me, the undersigned authority in and for said County and State, the within named **Andrew Katersky** (Beneficiary) who acknowledged signing and delivering the above

IN WITNESS WHEREOF, the undersigned has executed this Amended and Restated Trust Agreement on the day and year first above written.

_____   _____ (SEAL)
Witness                       Andrew Katersky, BENEFICIARY

_____
Witness (this witness may not be the undersigned notary)

STATE OF California

COUNTY OF Los Angeles

This day personally appeared before me, the undersigned authority in and for said County and State, the within named **Andrew Katersky** (Beneficiary) who acknowledged signing and delivering the above and foregoing Amended and Restated HAL KATERSKY IRREVOCABLE LIFE INSURANCE TRUST on the day and date therein mentioned as a free and voluntary act and deed and for the purposes therein expressed.

GIVEN under my hand and seal of office this the 29 day of October, 2008.

RICHARD M. POST
Commission # 1792215
Notary Public - California
Los Angeles County
My Comm. Expires Mar 25, 2012

_____
Notary Public

My Commission Expires:

IN WITNESS WHEREOF, the undersigned has executed this Amended and Restated Trust Agreement on the day and year first above written.

_____   _____ (SEAL)
Witness                       Robin Katersky, BENEFICIARY

_____
Witness (this witness may not be the undersigned notary)

STATE OF California

COUNTY OF Los Angeles

This day personally appeared before me, the undersigned authority in and for said County and State, the within named **Robin Katersky** (Beneficiary) who acknowledged signing and delivering the above and foregoing Amended and Restated HAL KATERSKY IRREVOCABLE LIFE INSURANCE TRUST on the day and date therein mentioned as a free and voluntary act and deed and for the purposes therein expressed.

GIVEN under my hand and seal of office this the 29 day of October, 2008.

RICHARD M. POST
Commission # 1792215
Notary Public - California
Los Angeles County
My Comm. Expires Mar 25, 2012

_____
Notary Public

My Commission Expires:

IN WITNESS WHEREOF, the undersigned has executed this Amended and Restated Trust Agreement on the day and year first above written.

IN WITNESS WHEREOF, the undersigned has executed this Amended and Restated Trust Agreement on the day and year first above written.

_____      _____ (SEAL)
Witness                               Jeffrey Katersky, BENEFICIARY

_____

Witness (this witness may not be the
undersigned notary)

NOTARIZE

STATE OF _California_

COUNTY OF _Los Angeles_

This day personally appeared before me, the undersigned authority in and for said County and State, the within named Jeffrey Katersky (Beneficiary) who acknowledged signing and delivering the above and foregoing Amended and Restated HAL KATERSKY IRREVOCABLE LIFE INSURANCE TRUST on the day and date therein mentioned as a free and voluntary act and deed and for the purposes therein expressed.

GIVEN under my hand and official seal of office this the _29_ day of _October_, 2008.

Commission # 1792215
Notary Public · California
Los Angeles County
My Comm. Expires Mar 26, 2012

_____
Notary Public

My Commission Expires:

IN WITNESS WHEREOF, the undersigned has executed this Amended and Restated Trust Agreement on the day and year first above written.

_____      _____ (SEAL)
Witness                               Dylan Zelman, BENEFICIARY

_____

Witness (this witness may not be the
undersigned notary)

STATE OF _California_

COUNTY OF _Los Angeles_

This day personally appeared before me, the undersigned authority in and for said County and State, the within named Dylan Zelman (Beneficiary) who acknowledged signing and delivering the above and foregoing Amended and Restated HAL KATERSKY IRREVOCABLE LIFE INSURANCE TRUST on the day and date therein mentioned as a free and voluntary act and deed and for the purposes therein expressed.

GIVEN under my hand and official seal of office this the _5th_ day of _October_, 2008.

ALIREZA MAZAHRI
Commission # 1639914
Notary Public · California
Los Angeles County
My Comm. Expires Jan 21, 2010

_____
Notary Public

57

Witness (this witness may not be the
undersigned notary)

STATE OF _____

COUNTY OF _____

    This day personally appeared before me, the undersigned authority in and for said County and State,
the within named **Jeffrey Katersky (Beneficiary)** who acknowledged signing and delivering the above
and foregoing Amended and Restated HAL KATERSKY IRREVOCABLE LIFE INSURANCE TRUST
on the day and date therein mentioned as a free and voluntary act and deed and for the purposes
therein expressed.

    GIVEN under my hand and official seal of office this the _____ day of _____, 2008.


_____
Notary Public

My Commission Expires:

IN WITNESS WHEREOF, the undersigned has executed this Amended and Restated Trust Agreement on
the day and year first above written.

_____
Witness

_____
Witness (this witness may not be the
undersigned notary)

_____ _(SEAL)_
**Dylan Zelman, BENEFICIARY**

STATE OF _California_

COUNTY OF _Los Angeles_

    This day personally appeared before me, the undersigned authority in and for said County and State,
the within named **Dylan Zelman (Beneficiary)** who acknowledged signing and delivering the above and
foregoing Amended and Restated HAL KATERSKY IRREVOCABLE LIFE INSURANCE TRUST on
the day and date therein mentioned as a free and voluntary act and deed and for the purposes
therein expressed.

    GIVEN under my hand and official seal of office this the _5th_ day of _October_, 2008.

_____
Notary Public

ALIREZA MAZAHRI
Commission # 1639914
Notary Public - California
Los Angeles County
My Comm. Expires Jan 21, 2010

58

My Commission Expires:

IN WITNESS WHEREOF, the undersigned has executed this Trust Agreement on the day and year first above written.

Witness    C. Scott Nielsen

Bank of Utah, Independent Professional Trustee (SEAL)

By:
Title:    Vice President

Witness (this witness may not be the undersigned notary)    Brett R. King

STATE OF _____ Utah _____

COUNTY OF _____ Salt Lake _____

    This day personally appeared before me, the undersigned authority in and for said County and State, the within named named Nancy M. Dahl, as Vice President of Bank of Utah (Independent Professional Trustee) who acknowledged signing and delivering the above and foregoing Amended and Restated **HAL KATERSKY IRREVOCABLE LIFE INSURANCE TRUST** on the day and date therein mentioned as a free and voluntary act and deed and for the purposes therein expressed.

    GIVEN under my hand and official seal of office this the 4 day of Oct, 2008.

Notary Public

My Commission Expires:

SHARLEE HACKWORTH
Notary Public
State of Utah
My Comm. Expires Nov 19, 2011
200 E South Temple Ste 210 SLC UT 84111

60

DRAFT

July 8, 2011

VIA EMAIL: lgabriel@ebg-law.com

Larry W. Gabriel, Esq.              ***Confidential Settlement Document***
Ezra Brutzkus Gubner LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367

Re:   Amended and Restated Hal Katersky Irrevocable Life Insurance Trust
      dtd 8/29/2008 as amended and restated (the "Trust");
      The Lincoln National Life Insurance Company Policy Number JJ7031503 ("Policy").

Dear Larry:

The purpose of this letter ("Letter of Understanding") is to memorialize the terms of the settlement agreed to by and between (i) the Amended and Restated Hal Katersky Irrevocable Life Insurance Trust (the "Trust"), the Trust's Individual Trustee, Barry Lavine, the Settlor/Insured, Hal Katersky, and the beneficiaries of the Trust, Hillary A. Katersky, Andrew Katersky, Robin Katersky, Jeffrey Katersky and Dylan Zelman (collectively the "Trust Parties"); and (ii) Imperial Premium Finance, LLC ("IPF" or "Lender"). The Trust Parties and IPF are hereinafter referred to as the "Parties."

### UNDERLYING FACTS

A.   The Trust is the owner of the Policy issued to the Trust on or about July 18, 2008.

B.   On or about September 26, 2008, the Trust and IPF entered into a Loan Application and Agreement dated as of September 26, 2008 (the "Loan Agreement") pursuant to which IPF agreed to lend, on the terms and conditions and subject to the limitations set forth in the Loan Agreement, funds to pay premiums on the Policy owned by the Trust, together with related Trustee Expenses. In addition to the Loan Agreement, the parties entered into several other transaction documents, including a Promissory Note (the "Note"), an Assignment of Life Insurance Policy as Collateral (the "Assignment") and a Personal Guaranty (the "Guaranty") (collectively the "Loan Documents").

C.   On or about September 15, 2010, IPF sent to the Trustee a letter notifying the Trustee that that Note will become due and payable on October 15, 2010. The Note was not paid as and when due. Consequently, IPF continued to advance funds to the Trust to pay the premiums for the Policy. Pursuant to the terms of the Loan Agreement, IPF has advanced to the Trust the approximate amount of $425,000.00, which is subject to the terms of the Loan Documents.

D.   As of July 1, 2011, the Policy remains in full force and effect.

EXHIBIT "2"

61

DRAFT

    E.      A dispute exists between the Trust Parties and IPF as to their rights and obligations regarding the Loan Documents and the Policy.

### *TERMS OF THE SETTLEMENT*

Based upon the foregoing, the Trust Parties and IPF agree to resolve all their disputes and claims relating to or arising out of the Loan Documents and the Policy (collectively the "Loan Transaction") pursuant to the following terms and condition:

        1.      The Parties agree to use their best efforts to adhere to and accomplish the terms and conditions set forth in this Letter of Understanding.

        2.      IPF shall cause, pursuant to a separate life settlement agreement to be executed (the "Life Settlement Agreement"), an affiliate of IPF (hereinafter "Imperial Affiliate") to purchase the Policy from the Trust for the following amount:  (i) the total amount due to IPF under the Loan Documents, plus (ii) One Hundred and Fifty Thousand Dollars ($150,000).  The parties will act in good faith and use their best efforts to effectuate the transfer of ownership of the Policy from the Trust to Imperial.  Upon execution of the Life Settlement Agreement, the individual trustee, Barry Lavine ("Individual Trustee"), shall resign as the co-trustee of the Trust.

        3.      Within 10 days of execution of this Letter of Understanding, IPF shall advance as a loan to the Trust $150,000.  The payment shall be made by wire transfer to the trust account of the Trust Parties' attorney, Ezra, Brutzkus Gubner, LLP, to be held in escrow ("the Escrow").  The $150,000 shall be disbursed from Escrow to the Settlor as follows:

        a.      $50,000 upon execution of the Life Settlement Agreement;

        b.      $100,000 upon confirmation that ownership of the Policy has been transferred to Imperial or Imperial's Affiliate (or other entity designated by Imperial).

        4.      The Trust shall assign to IPF the Trust's right to collect from Imperial Affiliate all of the amounts mentioned in paragraph 1 of the Letter of Understanding, *supra*.

        5.      The Trust shall retain an irrevocable right and interest in and to the Policy's death benefits in an amount of One Million Dollars ($1,000,000) (the "Trust Parties Death Benefits").  The Trustee shall follow the written instructions of the Insured when selecting the Beneficiary or Beneficiaries of the mentioned One Million Dollars ($1,000,000) in the Policy's death benefits.

        6.      Subject to the terms agreed to in paragraph 6, *infra*, IPF or Imperial Affiliate shall keep the Policy in full force and effect at all times during the life of the Insured.  Other than the liabilities under this Letter of Understanding, once the Parties have executed the Life Settlement Agreement, the Trust Parties shall have no liability for the payment of any of the premiums due on or for the Policy.  Moreover, other than the amounts that IPF is entitled to recover under this Letter of Understanding, once the Parties have executed the Life Settlement

DRAFT

Agreement, IPF shall not be entitled to reimbursement for any amounts paid to keep the Policy in force and effect during the life of the Insured.

7.      IPF and/or Imperial Affiliate shall provide the Trust Parties written notice of its intent to abandon the Policy and or its intention not to keep the Policy in force and effect. In such event, the Trust Parties shall have the option to assume the burden and benefits of the Policy, without obligation to repay IPF or Imperial Affiliate any moneys previously paid for the Policy and premiums paid thereunder.

8.      The Parties shall exchange full and unconditional releases with each other, which releases shall include the Parties' agents, representatives, attorneys, successors, assigns, heirs and representatives. The releases will become effective as soon as all of the Parties have executed the Life Settlement Agreement and complied with the obligations under both this Letter of Understanding and the Life Settlement Agreement.

9.      Notwithstanding anything in this Letter of Understanding to the contrary, Insured agrees to continue to cooperate with IPF and/or Imperial Affiliate for as long as the Policy is in force and effect and execute all documents requested in connection with securing IPF and/or Imperial Affiliate's interest in the Policy, including but not limited to providing all medical information when and as requested. The Trust Parties understand and agree that time is of the essence when it comes to Insured's obligation to comply with this provision, and that the Insured's failure to comply will amount to a material breach which will entitle IPF and/or Imperial's Affiliate to the recovery of all damages suffered, including but not limited to the right to collect from the Trust Parties all expenses and attorneys fees as a result of the breach.

10.      Notwithstanding anything in this Letter of Understanding to the contrary, the Individual Trustee agrees to continue to cooperate with IPF and/or Imperial Affiliate for as long as deemed necessary by IPF and execute all documents requested in connection with securing IPF and/or Imperial Affiliate's interest in the Policy. The Trust Parties understand and agree that time is of the essence when it comes to Individual Trustee's obligation to comply with this provision, and that the Individual Trustee's failure to comply will amount to a material breach which will entitle IPF and/or Imperial's Affiliate to the recovery of all damages suffered, including but not limited to the right to collect from the Trust Parties all expenses and attorneys fees as a result of the breach.

11.      From time to time the Parties shall issue, sign and execute all documents that need to be issued, signed and/or executed to perfect and/or ensure compliance and/or enforcement of the settlement between the Parties, as documented in this Letter of Understanding.

Sincerely,


Christopher O'Reilly
Senior Corporate Counsel,

DRAFT

Imperial Premium Finance, LLC

*[Signatures on Following Page]*

DRAFT

Acknowledged and Agreed:

By: _____
Harold Katersky

By: _____
Barry Lavine, individually and as Trustee of
the Hal Katersky Irrevocable Life Insurance Trust


By: _____
Hilary A. Katersky


By: _____
Andrew Katersky


By: _____
Robin Katersky


By: _____
Jeffrey Katersky


By: _____
Dylan Zelman (or Legal Guardian, if required)


Acknowledged and Agreed:


By: _____
Bank of Utah,
as Independent Professional Trustee
of Harold Katersky Irrevocable Life Insurance Trust

DRAFT

**Acknowledged and Agreed:**

By: _____
       Harold Katersky

By: _____
       **Barry Lavine**, individually and as Trustee of
       the Hal Katersky Irrevocable Life Insurance Trust

By: _____
       **Hilary A. Katersky**

By: _____
       **Andrew Katersky**

By: _____
       **Robin Katersky**

By: _____
       **Jeffrey Katersky**

By: _____
       **Dylan Zelman** (or Legal Guardian, if required)


**Acknowledged and Agreed:**

By: _____
       **Bank of Utah,**
       as Independent Professional Trustee
       of Harold Katersky Irrevocable Life Insurance Trust

DRAFT

**Acknowledged and Agreed:**

By: _____
    **Harold Katersky**

By: _____
    **Barry Lavine,** individually and as Trustee of
    the Hal Katersky Irrevocable Life Insurance Trust

By: _____
    **Hilary A. Katersky**

By: _____
    **Andrew Katersky**

By: _____
    **Robin Katersky**

By: _____
    **Jeffrey Katersky**

By: _____
    **Dylan Zelman** (or Legal Guardian, if required)

**Acknowledged and Agreed:**

By:_____
    **Bank of Utah,**
    as Independent Professional Trustee
    of Harold Katersky Irrevocable Life Insurance Trust

DRAFT

**Acknowledged and Agreed:**

By: _____
      Harold Katersky

By: _____
      Barry Lavine, individually and as Trustee of
      the Hal Katersky Irrevocable Life Insurance Trust

By: _____
      Hilary A. Katersky

By: _____
      Andrew Katersky

By: _____
      Robin Katersky

By: _____
      Jeffrey Katersky

By: _____
      Dylan Zelman (or Legal Guardian, if required)

**Acknowledged and Agreed:**

By:_____
      Bank of Utah,
      as Independent Professional Trustee
      of Harold Katersky Irrevocable Life Insurance Trust

DRAFT

**Acknowledged and Agreed:**

By: _____
     **Harold Katersky**

By: _____
     **Barry Lavine**, individually and as Trustee of
     the Hal Katersky Irrevocable Life Insurance Trust

By: _____
     **Hilary A. Katersky**

By: _____
     **Andrew Katersky**

By: _____
     **Robin Katersky**

By: _____
     **Jeffrey Katersky**

By: _____
     **Dylan Zelman** (or Legal Guardian, if required)

**Acknowledged and Agreed:**

By: _____
     **Bank of Utah,**
     as Independent Professional Trustee
     of Harold Katersky Irrevocable Life Insurance Trust

DRAFT

**Acknowledged and Agreed:**

By: _____
   **Harold Katersky**


By: _____
   **Barry Lavine**, individually and as Trustee of
   the Hal Katersky Irrevocable Life Insurance Trust


By: _____
   **Hilary A. Katersky**


By: _____
   **Andrew Katersky**


By: _____
   **Robin Katersky**


By: _____
   **Jeffrey Katersky**


By: _____
   **Dylan Zelman** (or Legal Guardian, if required)


**Acknowledged and Agreed:**

By: _____   Brett R. King
                                Vice President
   **Bank of Utah,**
   as Independent Professional Trustee
   of Harold Katersky Irrevocable Life Insurance Trust


70



Ezra Brutzkus Gubner LLP
*A Limited Liability Partnership*

Warner Center
21650 Oxnard Street
Suite 500
Woodland Hills, CA 91367

T 818.827.9000
F 818.827.9099
www.ebg-law.com

Larry W. Gabriel
T (818) 827-9000
F (818) 827-9099
lgabriel@ebg-law.com

May 4, 2012

**VIA E-MAIL: cuzaj@gtlaw.com & U.S. MAIL**

Jesus E. Cuza, Esq.
Michael Garcia, Esq.
Holland & Knight
701 Brickell Avenue, Suite 3000
Miami, FL 33131

Re:   Hal Katersky: Letter of Understand dated July 8, 2011 Re:  Amended and
Restated Hal Katersky Irrevocable Life Insurance Trust dtd 8/29/2008 as amended
and restated (the "Trust")(the "Agreement"); The Lincoln National Life Insurance
Company  ("Lincoln") - Policy Number JJ7031503 ("Policy")

Our File No. 2503.021

Jesus:

I'm in receipt of your email of yesterday regarding the status of this matter in which you
state:

"I just left you a voice mail at your office.  We need to know by the end of
business tomorrow if your client is going to comply with the agreement that was
agreed to last month.  The word on the street is that your client or someone on his
behalf is trying to market the policy, something that I cannot believe it be
happening in light of your prior emails on the subject and the obligations that
parties have to not act in bad faith.

In any event, my client is happy to conclude this week the agreement that
was reached in April.  If matters are not finalized this week, the lender (also an
Imperial entity) will exercise the rights that it has as a lender and your client will

528806

71

EXHIBIT "3"

Ezra Brutzkus Gubner LLP
*A Limited Liability Partnership*

May 4, 2012
Page 2

be further required to immediately return the amounts that it has already collected in consideration of the life settlement transaction."

First, no final agreement has been reached.  Indeed, as you know, we still have not received from your offices the final versions of any deal documents.

Second, your client's only rights are to receive repayment of any amounts paid by Imperial in regard to the financing of the policy.

Given the foregoing, please provide us with a pay-off figure of the amount Imperial contends it is now owed for the financing of the premium as of the current date.   We expect to receive Imperial's demand within 10 days from the date hereof, the client is prepared to pay the demand within five days from receipt of the demand.

For purposes of the payoff, we would suggest using your firm as the escrow agent.   We will prepare a mutual release.  We would request you prepare any additional documents that are typically used when the client repays the premium financing loan, including a direction to the corporate trustee regarding the payoff.

Regards,

LARRY W. GABRIEL

LWG:nf
cc:   Hal Katersky
      Steven T. Gubner, Esq. (i/o)

528806

72

# Holland & Knight

701 Brickell Avenue, Suite 3000 | Miami, FL 33131 | T 305.374.8500 | F 305.789.7799
Holland & Knight LLP | www.hklaw.com

Jesus E. Cuza
(305) 789-7513
jesus.cuza@hklaw.com

May 21, 2012

*Via E-mail (lgabriel@ebg-law.com)*

Larry W. Gabriel
Ezra Brutzkus Gubner LLP
Warner Center
21650 Oxnard Street
Woodland Hills, CA 91367

      Re:    Life Settlement Agreement and Designation Side Letter between The Hal Katersky
              Irrevocable Life Insurance Trust (the "Trust") and Imperial Life Settlements, LLC
              ("Imperial Life")  in connection with Lincoln National Life Insurance Company -
              Policy Number JJ7031503 (the "Policy")

Dear Larry:

      I respond to your letter of May 4, 2012.

      For months, Imperial Life acted reasonably to accommodate your client even though the
Trust has materially breached its obligations under the Loan Application & Agreement (the
"Loan Agreement") with Imperial Finance Premium Finance, LLC ("Imperial Finance").  During
negotiations relating to the life settlement, on more than one occasion Imperial Life in good faith
relied on representations made by you and your client that the parties had reached an agreement
concerning the life settlement of the Policy.   To be sure, *and relying on your specific
representation*, Imperial Life advanced $150,000.00 during two separate installments in
connection with the parties' agreement.   The record relating to these matters speak for
themselves.

      It is now obvious that you chose to ignore most of Mike's and my communications in
April and May because someone at your end has been negotiating behind Imperial Life's back
with some third party or parties in an effort to sell the Policy-- *actions which you yourselves
criticized in writing when you were under the mistaken impression that my client was trying to
sell the Policy*.  Such conduct clearly contravenes the promises made by your client and the
further obligation that your client has to act in good faith.   Under these circumstances, Imperial
Life has no interest in doing business with your client or pursuing a life settlement of the Policy.

      In light of the above, Imperial Life demands that the $150,000 previously advanced in
connection with the life settlement be returned immediately, and by no later than May 25, 2012.

Atlanta | Boston | Chicago | Fort Lauderdale | Jacksonville | Lakeland | Los Angeles | Miami | New York | Northern Virginia | Orlando
Portland | San Francisco | Tallahassee | Tampa | Washington, D.C. | West Palm Beach

Larry W. Gabriel
May 21, 2012
Page 2

Moreover, your client is put on notice that Imperial Finance will be exercising all available rights under the Loan Agreement and related documents.

Sincerely yours,

HOLLAND & KNIGHT LLP

Jesus E. Cuza

JEC:gr

#11216227_v1

# Holland & Knight

701 Brickell Avenue, Suite 3000 | Miami, FL 33131 | T 305.374.8500 | F 305.789.7799
Holland & Knight LLP | www.hklaw.com

Jesus E. Cuza
(305) 789-7513
jesus.cuza@hklaw.com

May 21, 2012

*Via E-mail (lgabriel@ebg-law.com)*

Larry W. Gabriel
Ezra Brutzkus Gubner LLP
Warner Center
21650 Oxnard Street
Woodland Hills, CA 91367

      Re:    Life Settlement Agreement and Designation Side Letter between The Hal Katersky Irrevocable Life Insurance Trust (the "Trust") and Imperial Life Settlements, LLC ("Imperial Life") in connection with Lincoln National Life Insurance Company - Policy Number JJ7031503 (the "Policy")

Dear Larry:

I respond to your letter of May 4, 2012.

For months, Imperial Life acted reasonably to accommodate your client even though the Trust has materially breached its obligations under the Loan Application & Agreement (the "Loan Agreement") with Imperial Finance Premium Finance, LLC ("Imperial Finance"). During negotiations relating to the life settlement, on more than one occasion Imperial Life in good faith relied on representations made by you and your client that the parties had reached an agreement concerning the life settlement of the Policy. To be sure, *and relying on your specific representation*, Imperial Life advanced $150,000.00 during two separate installments in connection with the parties' agreement. The record relating to these matters speak for themselves.

It is now obvious that you chose to ignore most of Mike's and my communications in April and May because someone at your end has been negotiating behind Imperial Life's back with some third party or parties in an effort to sell the Policy-- *actions which you yourselves criticized in writing when you were under the mistaken impression that my client was trying to sell the Policy.* Such conduct clearly contravenes the promises made by your client and the further obligation that your client has to act in good faith. Under these circumstances, Imperial Life has no interest in doing business with your client or pursuing a life settlement of the Policy.

In light of the above, Imperial Life demands that the $150,000 previously advanced in connection with the life settlement be returned immediately, and by no later than May 25, 2012.

Atlanta | Boston | Chicago | Fort Lauderdale | Jacksonville | Lakeland | Los Angeles | Miami | New York | Northern Virginia | Orlando
Portland | San Francisco | Tallahassee | Tampa | Washington, D.C. | West Palm Beach

EXHIBIT "5"

Larry W. Gabriel
May 21, 2012
Page 2


Moreover, your client is put on notice that Imperial Finance will be exercising all available rights under the Loan Agreement and related documents.

                                        Sincerely yours,

                                        HOLLAND & KNIGHT LLP

                                        Jesus E. Cuza

JEC:gr

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dolly Gee and the assigned discovery Magistrate Judge is Carla Woehrle.

The case number on all documents filed with the Court should read as follows:

## CV12- 4503 DMG (CWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [_] Southern Division | [_] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address:

Larry W. Gabriel   Steven T. Gubner   Corey R. Weber
Ezra Brutzkus Gubner LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA  91367
T: (818) 827-9000   F:(818) 827-9099

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Hal Katersky, Barry Lavine, as the Individual Trustee of the Amended And

Restated Hal Katersky Irrevocable Life Insurance Trust Dtd 8/29/2008, Hillary

A. Katersky, Andrew Katersky, Robin Katersky, Jeffrey Katersky and

Dylan Zelman                                          PLAINTIFF(S)

v.

Imperial Premium Finance, LLC; Imperial Life Settlements, LLC; Bank Of

Utah, And The Lincoln National Life Insurance Company

DEFENDANT(S) .

CASE NUMBER

CV12-04503

DMG(lwx)

**SUMMONS**

TO:   DEFENDANT(S):

A lawsuit has been filed against you.

Within 21_____ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached [X] complaint [ ]_____ amended complaint [ ] counterclaim [ ] cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, Larry W. Gabriel_____ , whose address is Ezra Brutzkus Gubner LLP, 21650 Oxnard Street, Suite 500, Woodland Hills, CA  91367_____ . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

MAY 2 3 2012

Dated: _____

Clerk, U.S. District Court

By: _____
                    Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                **SUMMONS**

CCD-1A

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐ )

Hal Katersky, Barry Lavine, as the Individual Trustee of the Amended And Restated
Hal Katersky Irrevocable Life Insurance Trust Dtd 8/29/2008, Hillary A. Katersky,
Andrew Katersky, Robin Katersky, Jeffrey Katersky And Dylan Zelman

**DEFENDANTS**

Imperial Premium Finance, LLC; Imperial Life Settlements, LLC; Bank Of Utah,
And The Lincoln National Life Insurance Company

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Larry W. Gabriel   Steven T. Gubner   Corey R. Weber
Ezra Brutzkus Gubner LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA  91367
T: (818) 827-9000
F: (818) 827-9099

Attorneys (If Known)

**II.   BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III.   CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV.   ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V.   REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI.   CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 USC. § 2201

**VII.   NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE/ PENALTY | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | SOCIAL SECURITY |
| ☒ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | REAL PROPERTY | | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | | IMMIGRATION | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety/Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | ☐ 440 Other Civil Rights | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS - Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

FOR OFFICE USE ONLY:   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

V-71 (05/08)                                    CIVIL COVER SHEET                                    Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).   IDENTICAL CASES:**  Has this action been previously filed in this court and dismissed, remanded or closed?  [X] No   [ ] Yes
If yes, list case number(s): _____

**VIII(b).   RELATED CASES:**  Have any cases been previously filed in this court that are related to the present case?  [X] No   [ ] Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   [ ]   A. Arise from the same or closely related transactions, happenings, or events; or
                               [ ]   B. Call for determination of the same or substantially related or similar questions of law and fact; or
                               [ ]   C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                               [ ]   D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX.   VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
     [ ] Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Ventura: Hal Katersky, Hillary Katersky, Jeffrey Katersky, Dylan Zelman  Los Angeles: Barry Lavine, Andrew Katersky | Robin Katersky - Australia |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
     [ ] Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Imperial Premium Finance, LLC - Delaware; Imperial Life Settlements, LLC - Delaware; Bank Of Utah - Utah; The Lincoln National Life Insurance Company - Indiana |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
     Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Ventura | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X.   SIGNATURE OF ATTORNEY (OR PRO PER):** _____    Date  May 23, 2012

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |